■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v CHARLES T. WILLIAMS, Appellant. [759 NYS2d 580] —Kane, J. Appeal from a judgment of the County Court of Tompkins County (Rowley, J.), rendered October 30, 2001, upon a verdict convicting defendant of the crimes of criminal possession of a controlled substance in the third degree and criminal possession of a controlled substance in the fifth degree.

At approximately 3:30 P.M. on June 1, 2001, Investigator

Douglas Martin, supervisor of the Special Investigations Unit of the City of Ithaca Police Department, was in a vehicle in the parking lot of the Pyramid Mall in the Town of Lansing, Tompkins County, conducting surveillance with Investigator Rick Rogers of the State Police. Two uniformed State Troopers and at least three other plain clothes police officers were also in the parking lot in other vehicles. The officers were there to arrest Anthony Woods and Nathaniel Kinsey, who were subjects of arrest warrants issued upon sealed indictments charging them with criminal sale of a controlled substance in the third degree. An undercover officer had arranged to meet with Woods and Kinsey at the Pyramid Mall that day to buy cocaine. After Woods completed the drug sale, he returned to the vehicle, a Saturn, that defendant and Kinsey were occupying. The Saturn then pulled into a parking space and parked. Two police vehicles pulled directly behind the Saturn's left and right rear bumper, blocking its exit. Investigators Martin and Rogers, Nelson Torres and Andy Navarro got out of their vehicles with their firearms drawn. Defendant was removed from the vehicle and handed over to the custody of State Trooper Robert Kidder, who handcuffed defendant and performed a cursory pat-down for weapons, which lasted approximately 15 seconds. Approximately 15 to 20 seconds after the pat-down, Kidder looked down and saw a large cargo-style pocket halfway down defendant's pant leg in which he observed a small cellophane ziplock baggy containing smaller pink or purple ziplock baggies containing a white, chunky substance. Suspecting the substance was cocaine, Kidder reached into defendant's pocket and removed the baggy.

Defendant was thereafter indicted for the crimes of criminal possession of a controlled substance in the third degree and criminal possession of a controlled substance in the fifth degree (see Penal Law § 220.16 [1]; § 220.06 [5]). Defendant filed an omnibus motion seeking, inter alia, suppression of the cocaine. County Court denied defendant's suppression motion and the matter proceeded to trial. Defendant was convicted of criminal possession of a controlled substance in the third degree and criminal possession of a controlled substance in the fifth degree. He unsuccessfully moved for a new trial, pursuant to CPL 330.30, and was sentenced to concurrent prison terms of 1 to 3 years.

On appeal, defendant first contests County Court's suppression ruling, asserting that the police conduct that led to the discovery of cocaine in his possession was unlawful. Defendant argues that the stop and his subsequent detention constituted

an impermissible arrest made without probable cause. Specifically, defendant maintains that he was under arrest when the officers drew their weapons and handcuffed him. He further contends that the seizure followed an improper pat-down and was a product of an illegal arrest. Upon review of the evidence presented at the suppression hearing, we disagree.

County Court properly found that the police acted appropriately in stopping the vehicle in which defendant was a passenger, based upon the fact that arrest warrants had been issued for Woods and Kinsey, who were in the vehicle with defendant when it was stopped. Furthermore, the undercover officer had just purchased cocaine from Woods. Contrary to defendant's contention, the record establishes that the police legally stopped the car in which defendant was a passenger and the police were authorized to direct both the driver and the occupants out of the vehicle (see People v Robinson, 74 NY2d 773, 775 [1989], cert denied 493 US 966 [1989]).

Nor do we agree with defendant that the police officers' initial stop of defendant constituted an arrest requiring probable cause. The fact that the police officers drew their guns on defendant and then handcuffed him does not necessarily convert a detention into an arrest (see People v Allen, 73 NY2d 378, 379-380 [1989]; see also People v Chestnut, 51 NY2d 14, 21 [1980], cert denied 449 US 1018 [1980]; People v Dluhy, 288 AD2d 693, 694 [2001], lv denied 97 NY2d 728 [2002], cert denied 537 US 978 [2002]; People v Bennett, 189 AD2d 924, 925 [1993]). We must determine the reasonableness of police action under the "Fourth Amendment's general proscription against unreasonable searches and seizures" (Terry v Ohio, 392 US 1, 20 [1968]). "The crucial factor is whether or not the police behavior can be characterized as reasonable which, in terms of accepted standards, requires a balancing of the interests involved in the police inquiry" (People v De Bour, 40 NY2d 210, 217 [1976] [citations omitted]). "[I]n justifying the particular intrusion the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion" (Terry v Ohio, supra at 21). Here, the police were seeking to execute felony arrest warrants on Woods and Kinsey, as well as arrest Woods for a drug sale made to an undercover police officer moments earlier. Martin testified that the police officers approached the vehicle with their weapons drawn to ensure their own safety. In support of this contention, Martin testified that in his experience with narcotics dealers, it would be neither unreasonable nor unrealistic to suspect

that either Woods or Kinsey was armed. Furthermore, Martin testified that one week previously, Woods had asked an undercover officer to obtain a handgun for him. Significantly, Woods had just left the vehicle to complete a drug sale and immediately thereafter returned to the vehicle. Upon these facts, it was "a rational inference" that Woods, Kinsey or, for that matter, defendant was armed and that the police were "justified in taking precautionary measures to ensure their own safety and well-being" (*People v Chestnut, supra* at 21; *see People v Allen, supra* at 379-380). Based upon these articulated facts, it was not unreasonable for the police to approach the vehicle with guns drawn and to handcuff all three occupants of the car to ensure the safety of the police officers while they determined whether the occupants were in fact armed.

We further find that these circumstances justified a frisk of defendant after he was removed from the car. At the outset, we note that the evidence was seized from defendant not during his pat-down but, rather, some 15 to 20 seconds thereafter. In any event, "it is well settled that a 'pat down' search of the outer clothing of a suspect is a reasonable and constitutionally permissible precaution so long as the officer, as a precursor, observes facts and circumstances which give rise to a reasonable suspicion that the person is armed or poses a threat to his safety" (*People v Siler*, 288 AD2d 625, 626 [2001], *lv denied* 97 NY2d 709 [2002]; *see People v Batista*, 88 NY2d 650, 653-654 [1996]; *People v Varlack*, 290 AD2d 647, 648 [2002], *lv denied* 97 NY2d 762 [2002]). Because the facts demonstrate that defendant was clearly a companion to Woods and Kinsey, and since there was "a rational inference" that Woods, Kinsey or defendant was armed, we find defendant's reliance on *People v Chinchillo* (120 AD2d 266 [1986]) misplaced.

Next, we reject defendant's contention that the cocaine seized from defendant resulted from an illegal search. Here, Kidder testified at the suppression hearing that *after* his cursory pat-down of defendant, he observed the small cellophane bag in defendant's right pants leg pocket in plain view (*see People v Thomas*, 125 AD2d 895, 897 [1986]). Kidder testified that he was able to see and identify the cocaine contained in the ziplock baggies in an opened, large cargo pocket on defendant's pant leg, which pocket had no covering flap. Based on his training and professional experience, Kidder reasonably believed the substance he observed to be cocaine. Whether the officer could physically see that to which he testified presented a credibility issue for assessment by the suppression court (*see People v Ackerley*, 140 AD2d 806, 807-808 [1988]). Here, we must

discount defendant's reliance on the trial testimony of a witness to the pat-down as our review in this respect is limited to the suppression hearing testimony (*see People v Wilkins*, 65 NY2d 172, 180 [1985]).

Finally, we find no merit to defendant's contention that he was not afforded the effective assistance of counsel. "Defendant has received the effective assistance of counsel when 'the evidence, the law and the circumstances of the case, viewed in their totality and as of the time of representation, reveal that the defendant received meaningful representation'" (*People v Gilliam*, 300 AD2d 701, 701 [2002], quoting *People v Wright*, 297 AD2d 875, 875 [2002]). Defendant's simple disagreement with defense counsel's strategies will not suffice (*see People v Benn*, 68 NY2d 941, 942 [1986]). Notwithstanding trial counsel's failure to timely serve a notice for a bill of particulars and demand for discovery, defendant obtained extensive discovery materials from the People and was not prejudiced. Defendant further maintains that as a result of counsel's failure to adequately understand and explain the charges, defendant testified at trial and inadvertently admitted a material element of criminal possession with intent to sell. There is nothing in the record before this Court that would indicate the nature and extent of the conversations between trial counsel and defendant that resulted in defendant's decision to testify. Under such circumstances, the adequacy of representation is more properly raised in a proceeding pursuant to CPL article 440 (*see People v Martin*, 52 AD2d 988, 989 [1976]). Our review of the record demonstrates that defendant was accorded the appropriate pretrial hearings and trial counsel vigorously cross-examined the People's witnesses, both at the pretrial hearings and during trial, and provided defendant with meaningful representation (*see People v Baldi*, 54 NY2d 137, 147 [1981]).

Peters and Rose, JJ., concur.

Crew III, J.P. (dissenting). "The constitutionality of a plain view seizure 'must turn on the legality of the intrusion that enables [police] to perceive and physically seize the property in question'" (*People v Brown*, 96 NY2d 80, 89 [2001], quoting *Texas v Brown*, 460 US 730, 737 [1983]). Because I believe that the police action here was unjustified in its inception and, even if deemed justified, was not reasonably related in scope to the circumstances existing, the plain view seizure that followed was unconstitutional.

It is axiomatic that in order to justify the frisk of a defendant, such action must be supported by a reasonable belief,

based upon specific and articulable facts, that the defendant has committed or is about to commit a crime or that he or she is armed and presently dangerous (*see e.g. People v De Bour*, 40 NY2d 210, 223 [1976]). Additionally, in determining whether a stop and frisk is reasonable, courts must undertake a dual inquiry and determine "whether the officer's action was justified at its inception, and whether it was reasonably related in scope to the circumstances which justified the interference in the first place" (*Terry v Ohio*, 392 US 1, 20 [1968]). It also is well established that the mere fact that a defendant is in the presence of persons known to have engaged in criminal activity does not provide reasonable suspicion justifying a frisk of the defendant (*see People v Chinchillo*, 120 AD2d 266, 268 [1986]). Put another way, a defendant's mere propinquity to others independently suspected of criminal activity does not provide a legal basis for a frisk (*see People v Otty*, 223 AD2d 364, 365 [1996]). Finally, it goes without saying that a defendant may not be arrested on less than probable cause (*see e.g. People v Hollman*, 79 NY2d 181, 185 [1992]).

With these principles in mind, an examination of the testimony credited by County Court leads me to conclude that State Trooper Robert Kidder's frisk of defendant was not justified at its inception or, if it could be deemed justified, was not reasonably related in scope to the circumstances presented. Kidder's action, in my view, constituted an arrest that clearly was not supported by probable cause.

The testimony, credited by County Court, was brief and succinct. Six police officers, four plain clothed and two uniformed, arrived at a shopping mall in broad daylight to execute two arrest warrants. The four plain-clothed officers, with weapons drawn, approached a gold and tan Saturn automobile parked in a parking space in which one of the subjects of the arrest warrants sat in the driver's seat and the other sat in the rear. Defendant sat in the front passenger seat. The individuals in the Saturn were told to keep their hands in view, which they did, and each was removed from the car. The officer who removed defendant from the car passed him off to the two uniformed officers with instructions to "secure him." Kidder did so by handcuffing defendant and then frisking him, finding no weapons. Kidder did not then remove the handcuffs, but continued to restrain defendant by holding his left arm and observing the arrest of the other two persons. Realizing that he was not in a position to observe the other officers, Kidder moved to defendant's right side and held his right arm to "maintain control of him." After briefly observing the progress of the other

arresting officers, Kidder looked down at defendant's pant leg and noticed the controlled substance for which defendant was arrested.

As noted previously, the mere fact that defendant was in the presence of two persons known to have engaged in criminal activity does not provide reasonable suspicion justifying a frisk of his person (*see People v Otty, supra; People v Chinchillo, supra*). And while there was evidence that one of the persons for whom there was an arrest warrant had made inquiry of an undercover officer about the purchase of a firearm, there was no evidence that this individual appeared to "pass" something to defendant as the police approached or that defendant was acting in a suspicious or furtive manner justifying a belief that he may be armed and dangerous (*see People v William II*, 98 NY2d 93, 99 [2002]; *compare People v Chestnut*, 51 NY2d 14, 22 [1980], *cert denied* 449 US 1018 [1980]). So while defendant, as a passenger in the vehicle, could be required to get out of the vehicle while the police executed their warrants (*cf. People v Robinson*, 74 NY2d 773 [1989], *cert denied* 493 US 966 [1989]), the police were not entitled to detain him, much less forcibly detain him (*see People v Robbins*, 83 NY2d 928 [1994]; *People v Campbell*, 245 AD2d 191 [1997]), and the resultant "stop and frisk" was constitutionally impermissible, as well as all that came thereafter.

Alternatively, assuming that in the situation that existed the police officers were entitled to frisk defendant, the circumstances as testified to by the two police officers did not, in my view, justify a full-blown seizure as exemplified by the handcuffing of defendant and then physically restraining his movements after the frisk revealed no weapons. In short, the seizure was not reasonable in scope to the circumstances that initially justified the police action.

Finally, because I believe that defendant was subject to a de facto arrest without probable cause, the controlled substance seized must be suppressed. While I agree with my learned colleagues that the application of handcuffs is not *always* dispositive of whether the detention of a suspect on reasonable suspicion has been elevated into a full-blown arrest (*see People v Allen*, 73 NY2d 378, 380 [1989] [police confronting a defendant believed to be armed in a dark alley were permitted, for their safety, to handcuff the defendant and lead him into a lighted area where he could be frisked]), such action is, absent unusual circumstances, indicative of arrest. Here, there is no record evidence of a rapidly developing and dangerous situation necessitating the use of handcuffs and physical restraint.

Indeed, from everything that may be gleaned from the record, these were routine arrests done in a public place in broad daylight. Accordingly, I am of the view that defendant was subject to a full-blown arrest and all that followed was unlawful. I would, therefore, reverse the judgment of conviction.

Ordered that the judgment is affirmed.