■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v DAVID MABEUS, Appellant. [— NYS2d —]—

Malone Jr., J. Appeal from a judgment of the County Court of Schenectady County (Eidens, J.), rendered August 9, 2004, convicting defendant upon his plea of guilty of the crime of robbery in the first degree.

The pertinent facts of this case, in which defendant challenges the legality of certain evidence obtained by the police during a search and seizure following his arrest, are set forth in our prior decision (47 AD3d 1073 [2008]). There, we withheld decision and remitted the matter to County Court for the purpose of conducting "a *Mapp/Dunaway* hearing to further develop the record with respect to the circumstances surrounding the applications for the sealed order and search warrants and the execution thereof, as well as the manner in which evidence sought to be suppressed was recovered" (*id.* at 1075). Following remittal, County Court (Drago, J.) undertook further review of the application for the sealed order authorizing the placement of a global positioning system (hereinafter GPS) tracking device on defendant's vehicle, which the parties stipu-

lated is the only search warrant at issue.[1] County Court concluded, based upon the four corners of the warrant and supporting documentation, that it was supported by probable cause and that no hearing was necessary. Defendant subsequently moved to, among other things, suppress all evidence obtained as a result of the search of his pick-up truck, home and person, as well as for an order directing that a *Franks* hearing be conducted to determine the veracity of statements by State Police Investigator Brendan Moran, which were contained in the search warrant application. In response, County Court issued an order directing that a suppression hearing be conducted to address (1) the search warrant application and supporting documentation, including the allegations in Moran's affidavit, (2) the manner and circumstances surrounding the installation of the GPS tracking device, and (3) the circumstances surrounding the seizure of the axe, black ski mask and bundled currency from defendant's vehicle.

In July 2008, a hearing was conducted by a Judicial Hearing Officer (hereinafter JHO). At the outset, the JHO noted on the record that there was no basis for a *Mapp/Dunaway* hearing concerning the legality of the initial stop of defendant and he proceeded to conduct a *Franks* hearing. At the hearing, Moran gave testimony concerning information contained in the application for the search warrant as well as his conversations with the confidential informant. The confidential informant was called as a witness, but refused to testify and invoked his Fifth Amendment right against self-incrimination. The final witness, former State Police Investigator Thomas Larson, gave testimony concerning the installation of the GPS tracking device in defendant's vehicle. At the conclusion of the testimony the JHO found that the search warrant was supported by probable cause and recommended that defendant's suppression motion be denied. County Court adopted the JHO's recommendation.

The matter is now again before us and we must consider the merits of defendant's challenge to the evidence seized in light of the information disclosed at the hearing. We note that defendant only challenges the legitimacy of the police action under the US Constitution. We start our analysis with the search warrant authorizing the placement of the GPS tracking device, as it is, pursuant to the parties' stipulation, the only search warrant at issue.

As a threshold matter, we must address whether it was necessary, in the first instance, for the police to obtain the search

---

1. In view of the parties' stipulation, all references herein to the search warrant shall mean the sealed order.

warrant authorizing the placement of the GPS tracking device on defendant's vehicle. We note that while the United States Supreme Court has held that the mere tracking of a vehicle on a public street by means of a beeper is not a search within the meaning of the Fourth Amendment (*see United States v Knotts*, 460 US 276, 284-285 [1983]), it has not definitively ruled on whether the installation of a GPS tracking device on a vehicle transforms it into a search (*see id.* at 279 n 2). The federal courts appear to be divided on the issue (*compare United States v McIver*, 186 F3d 1119, 1126-1127 [1999], *cert denied* 528 US 1177 [2000], *United States v Pretzinger*, 542 F2d 517, 520 [1976], *and United States v Moran*, 349 F Supp 2d 425, 467-468 [2005], *with United States v Shovea*, 580 F2d 1382, 1388 [1978], *cert denied* 440 US 908 [1979], *and United States v Moore*, 562 F2d 106, 110-112 [1977]). While the New York Court of Appeals has declined to rule on whether the warrantless placement of a GPS device on the exterior of a vehicle transgresses the Fourth Amendment, it recently held that such intrusion violates the NY Constitution (*see People v Weaver*, 12 NY3d 433, 445 [2009]). Key to the Court's analysis was its finding that there had been an infringement of the defendant's reasonable expectation of privacy, the same inquiry that is relevant when evaluating the legitimacy of police action under the Fourth Amendment (*see id.* at 444-445).

In the case at hand, the police action was much more intrusive than in *People v Weaver* (12 NY3d 433 [2009], *supra*). Larson, the former police investigator who actually installed the GPS tracking device, testified that a duplicate key for defendant's vehicle was obtained by the police and the vehicle was physically removed from its location outside the parole office, where defendant was attending an appointment, to the State Police garage. He stated that, once the vehicle was moved to the garage, the GPS tracking device was hardwired by placing it under the hood of the vehicle and the antenna was most probably placed under the dashboard by accessing it through the glovebox. Larson indicated that, after the GPS tracking device was installed, defendant's vehicle was moved back to the parking space that it previously occupied. As is clear from Larson's testimony, the police not only gained access to the interior of defendant's vehicle to install the device, but actually moved the vehicle to a location where the device could be more easily installed.

The United States Supreme Court has acknowledged that "[w]hile the interior of an automobile is not subject to the same expectations of privacy that exist with respect to one's home, a

car's interior as a whole is nonetheless subject to Fourth Amendment protection from unreasonable intrusions by the police" (*New York v Class*, 475 US 106, 114-115 [1986]). Under the circumstances presented here, defendant, who was not even present in the vehicle, had a legitimate expectation of privacy in its interior, which could only be accessed by using a key, and could reasonably assume that the vehicle would not be physically moved in his absence. In view of this, and given the Court of Appeals' recent decision in *Weaver*, we conclude that the search warrant was necessary in order to comport with the requirements of the Fourth Amendment in the case at hand.

Turning to the search warrant application, defendant asserts that it was defective because the information supplied by the confidential informant did not comply with the requirements of the two-prong *Aguilar-Spinelli* test (*see Spinelli v United States*, 393 US 410 [1969]; *Aguilar v Texas*, 378 US 108 [1964]) and, therefore, probable cause for its issuance was lacking. New York courts have adopted the *Aguilar-Spinelli* test in evaluating hearsay information from an undisclosed informant when making probable cause determinations (*see People v Johnson*, 66 NY2d 398, 402 [1985]; *People v Hanlon*, 36 NY2d 549, 556 [1975]). "Under this test, the application for a search warrant must demonstrate to the issuing [m]agistrate (i) the veracity or reliability of the source of the information, and (ii) the basis of the informant's knowledge" (*People v Griminger*, 71 NY2d 635, 639 [1988] [citations omitted]). Notably, where the information is based upon double hearsay, the foregoing requirements must be met with respect to each individual providing information (*see People v Ketcham*, 93 NY2d 416, 421 [1999]; *People v Parris*, 83 NY2d 342, 347-348 [1994]). An informant's reliability may be established by the fact that he or she provided accurate information in the past, gave a statement against penal interest or under oath, or by police investigation which corroborates the details of the informant's statement (*see People v DiFalco*, 80 NY2d 693, 697-698, 697 n 2 [1993]; *People v Johnson*, 66 NY2d at 403; *People v Rodriguez*, 52 NY2d 483, 489 [1981]; *People v Elwell*, 50 NY2d 231, 237 [1980]). An informant's basis of knowledge may be established by self-verification through the informant's provision of sufficient details from which the magistrate can reasonably infer that the informant had personal knowledge of the criminal enterprise or through independent police verification of facts suggestive of criminal activity (*see People v DiFalco*, 80 NY2d at 698 n 3; *People v Elwell*, 50 NY2d at 236; *People v Hanlon*, 36 NY2d at 556).

In the instant case, the search warrant application consisted

of Moran's affidavit, as well as the handwritten deposition of the confidential informant that he interviewed on July 23, 2003, who had been in prison with Jeffrey Monroe, a friend of defendant. According to the informant, Monroe frequently spoke with defendant over the telephone while in prison and told him that defendant lived with Monroe's sister in the Town of Clifton Park, Saratoga County, had robbed a McDonald's restaurant several times, for which he had been incarcerated, and also that defendant had escaped from prison. The informant further related that Monroe told him that defendant admitted to robbing a McDonald's restaurant in the Town of Ballston, Saratoga County and fleeing on a motorcycle that he had hidden in the woods nearby. The informant also stated that Monroe told him that defendant wore body armor and black clothing, including leather gloves, during this robbery, was armed with a pistol and owns a couple of different handguns.

In his affidavit in support of the search warrant application, Moran related the details of the police investigations of four robberies occurring between December 2002 and July 2003 at two McDonald's restaurants, one in the Town of Ballston and the other in the Town of Malta, both in Saratoga County. In these accounts, the perpetrator was described as a white male, ranging from five feet, three inches to six feet in height, carrying various weapons, including a handgun, a shotgun, and a hatchet, and wearing dark clothing and ski masks of differing colors. Moran confirmed through independent sources that defendant is approximately five feet, six inches tall, had been previously convicted of robbing two McDonald's restaurants, was incarcerated from 1992 until 2002, had telephone conversations with Monroe while in prison, had escaped from prison and, at the time of the warrant application, resided with Monroe's sister in Clifton Park. In an effort to corroborate the information provided by the informant, Moran stated that he visited the McDonald's restaurants that had been robbed and noted that there are woods nearby with trails wide enough for the passage of a motorcycle. He further indicated that motor vehicle records confirmed that defendant owned a motorcycle that could be driven both on and off road.

Under the circumstances presented, we are of the view that the *Aguilar-Spinelli* test was satisfied and that the warrant application was sufficient to establish probable cause for the placement of the GPS tracking device in defendant's vehicle. The confidential informant's reliability was established by the fact that he signed his handwritten deposition under oath. The reliability of his source, Monroe, was established by independent

police corroboration of certain information he imparted, including that he had telephone conversations with defendant while in prison, defendant lived with Monroe's sister, defendant had prior convictions for robbing two McDonald's restaurants, defendant had previously escaped from prison, and defendant owned a motorcycle which could be driven on or off road, all of which was true.

Moreover, the basis of knowledge of both the informant and his source, Monroe, was established by independent police verification of information provided that was suggestive of criminal activity. Specifically, such information included defendant's admission that he had robbed a McDonald's restaurant in Ballston and fled on a motorcycle that he hid in the woods, and police verification of the fact that he owned an on and off road motorcycle around the time of the robbery and that there were woods with trails behind the restaurant.[2] As for the additional information that defendant wore black clothing, body armor and gloves during the robbery, was armed with a pistol and owned different handguns, the police confirmed that the perpetrator of the four McDonald's restaurant robberies occurring between December 2002 and July 2003 was a white male, wore dark clothing as well as ski masks of differing colors and was armed with various weapons, including a handgun, a shotgun and a hatchet. The police also confirmed that defendant's height of 5 feet 6 inches was consistent with the height of the alleged perpetrator of the majority of these robberies. Significantly, all of these robberies occurred shortly after defendant was released from prison on his prior robbery conviction. In sum, the information independently gathered by the police, which was indicative of criminal activity, adequately corroborated the information supplied by the confidential informant and his source, Monroe, so as to establish the basis of knowledge of these individuals as required under the *Aguilar-Spinelli* test. Given that the *Aguilar-Spinelli* test was satisfied, the search warrant authorizing the placement of the GPS tracking device on defendant's vehicle was valid.

---

**2.** At the *Franks* hearing, it was disclosed that the robbery at the McDonald's restaurant in Ballston actually occurred just before midnight on April 25, 2003, instead of on April 26, 2003 as stated in the warrant application. It was also revealed that defendant did not acquire actual ownership of the motorcycle until April 26, 2003, the day after the robbery. Upon reviewing the transcript of the *Franks* hearing, we agree with County Court that such inaccuracies do not establish that Moran made intentional misrepresentations in the warrant application. Thus, although the misinformation is relevant to defendant's guilt, it does not affect the propriety of the search warrant application.

Notwithstanding the validity of the search warrant authorizing placement of the GPS tracking device, the legality of the seizure of the black ski mask, axe and bundled currency from defendant's truck at the time of his apprehension, as well as the admissibility of defendant's statements to the police, remain open questions. At the time the items in question were seized, no search warrant was in effect authorizing a search of the interior of defendant's vehicle and it is not known if these items were in plain view. As we noted in our prior decision, the record was, and still is, devoid of factual information concerning the circumstances surrounding defendant's initial detention and the manner in which the physical evidence was seized, and we previously remitted the matter to County Court for the very purpose of, among other things, conducting a *Mapp/Dunaway* hearing on these issues (47 AD3d at 1075). County Court, however, did not conduct such a hearing. Given that the failure to conduct such a hearing renders it impossible to determine whether probable cause existed for the seizure of the physical evidence and the admissibility of defendant's statements, we must withhold decision and again remit the matter to County Court to conduct this appropriate hearing.

Cardona, P.J., Spain and Kane, JJ., concur. Ordered that the decision is withheld, and matter remitted to the County Court of Schenectady County for further proceedings not inconsistent with this Court's decision.

