■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v DAVID MABEUS, Appellant. [893 NYS2d 644]—

Malone Jr., J.

The relevant facts are more fully set forth in our prior decisions in this matter (63 AD3d 1447 [2009]; 47 AD3d 1073 [2008]). Briefly, defendant was charged in an eight-count indictment with various theft-related crimes following the August 2003 armed robbery of a McDonald's restaurant in Schenectady County. After County Court denied his request for a *Mapp/Dunaway* hearing, defendant pleaded guilty to robbery in the first degree, without waiving his right to appeal, and was sentenced to 20 years in prison and five years of postrelease supervision. Upon defendant's initial appeal to this Court, we withheld decision pending completion of a *Mapp/Dunaway* hearing to further develop the record regarding, among other things, the circumstances surrounding the application for a search warrant authorizing the installation of a global positioning system (hereinafter GPS) tracking device on defendant's vehicle and that of his live-in girlfriend, the execution thereof and the manner in which the physical evidence sought to be suppressed was recovered (47 AD3d at 1075). Based upon the evidence adduced at that hearing, we concluded that the search warrant authorizing the placement of the GPS tracking device on defendant's vehicle was valid (63 AD3d at 1452). However, as to the circumstances surrounding defendant's arrest, the manner in which certain physical evidence was seized and the admissibility of defendant's statements to law enforcement officials, we again concluded that the record had not been sufficiently developed, withheld decision and remitted the matter to County Court to conduct an appropriate hearing (63 AD3d at 1453). That hearing is now completed and defendant's appeal is before us for disposition.

The crux of defendant's argument on appeal is that he was under arrest from the moment State Trooper Stephen Russom and his partner confronted him in his driveway with their weapons drawn, that there was no probable cause to arrest him at that point in time and, therefore, any subsequent statements made by him or physical evidence seized constitute fruit of the poisonous tree and must be suppressed. For the reasons that follow, we cannot agree and, accordingly, affirm defendant's conviction.

On August 9, 2003, Gregory Restina, formerly a detective with the Town of Glenville Police Department in Schenectady

County, received a report that a local McDonald's restaurant had been robbed by a man brandishing what appeared to be a handgun and an axe. That information was distributed to other law enforcement agencies, including the State Police. Upon learning of the robbery, Russom, who was on patrol with his partner, contacted Brendan Moran, a senior investigator with the State Police.[1] Moran instructed Russom to set up surveillance on defendant's residence and, if defendant appeared, to execute a "felony stop" utilizing extreme caution to ensure officer safety.[2]

Russom and his partner took up position nearby and, as defendant rolled through a stop sign en route to his residence, Russom identified defendant, whom he described as a "very distinctive looking individual," as the operator of the pickup truck in question—to which the GPS tracking device previously (and validly) had been affixed. Russom and his partner pulled in behind defendant in his driveway and, as defendant was exiting his truck, drew their weapons, ordered defendant from the vehicle and down to the ground, handcuffed defendant and placed him in the back of their marked police vehicle.[3] Numerous police officers responded to the scene, including Moran, who instructed another investigator to access the GPS tracking information. While waiting for this information, Moran observed an axe and a bag of clothing—in plain view—in the bed of defendant's pickup truck.

The GPS tracking information revealed that defendant's pickup truck had been in the vicinity of the McDonald's restaurant at the time of the robbery in Schenectady County;

---

1. Moran was investigating a series of robberies at McDonald's restaurants in Saratoga and Warren Counties and had identified defendant as a possible suspect in those robberies.

2. Moran testified that defendant had a history of engaging in armed robberies dating back to 1981 and that he twice escaped from secure detention facilities in Maryland. Moran further testified that when the State Police apprehended defendant following a residential break-in in Saratoga County, defendant remarked that they "got him at a good time, while he was changing his clothes and wasn't able to get to the firearm or he would have used it." Moran briefed the troopers assigned to the State Police barracks in the Town of Clifton Park, Saratoga County regarding defendant and his criminal history. Russom, who was assigned to that barracks, similarly testified that he was aware of defendant's criminal history and subsequent escapes from custody, as well as the fact that defendant was on parole at the time the instant offense occurred. Russom also was aware that the robbery suspect was armed with a handgun, but apparently either did not hear or did not make note of the fact that an axe was displayed as well.

3. The door to the vehicle initially remained opened but was closed at some later point.

the truck then returned to the Town of Clifton Park, Saratoga County and made a brief stop on Maxwell Road, where defendant apparently was employed, before proceeding to defendant's residence. Once this information was received, Moran testified, defendant was placed under arrest—roughly 35 minutes after he had been detained by Russom and his partner—and transported to the State Police barracks in Clifton Park, where he received his *Miranda* warnings.

In conjunction therewith, defendant's vehicle was towed to the State Police barracks, where Restina photographed the axe and clothing visible in the bed of the pickup truck. Restina and others then separately brought two McDonald's employees out to view the axe, each of whom identified it—based upon a distinctive marking on the blade—as the axe they had seen during the course of the robbery.[4] Restina applied for and obtained a search warrant authorizing a search of defendant's vehicle and place of employment—the validity of which defendant does not challenge—and a black knit ski mask, a black pellet .177 caliber handgun and a quantity of currency were among the items recovered.

Defendant does not dispute that Russom possessed a reasonable suspicion that a crime had been committed and, therefore, was authorized to forcibly stop and detain him in the first instance (*see e.g. People v Nesbitt*, 56 AD3d 816, 818 [2008], *lv denied* 11 NY3d 928 [2009]). The question before this Court is whether that investigatory stop ripened into a full-blown arrest. Resolution of this inquiry, in turn, centers upon "whether a reasonable person, innocent of any crime, would have believed he was arrested if he was in the defendant's position" (*People v Robinson*, 282 AD2d 75, 79 [2001], citing *People v Hicks*, 68 NY2d 234, 240 [1986]). Contrary to defendant's assertion, the propriety of an investigatory stop does not hinge upon the precise words or actions employed. Neither the fact that the troopers drew their weapons (*see People v Chestnut*, 51 NY2d 14, 21 [1980], *cert denied* 449 US 1018 [1980]) nor the fact that defendant was handcuffed (*see People v Allen*, 73 NY2d 378, 380 [1989]; *People v Galloway*, 40 AD3d 240, 240-241 [2007], *lv denied* 9 NY3d 844 [2007])—nor even the combination of those events (*see People v Williams*, 305 AD2d 804, 806 [2003])—

---

4. Restina testified that after the axe had been viewed, identified and photographed, defendant was interviewed, during the course of which he stated that he had done nothing wrong, denied being in Glenville on the night of the robbery and indicated that his truck had been in his possession the entire evening. Defendant then asked to speak with an attorney, at which point all questioning ceased. County Court found these statements to be voluntary, and that determination has not been challenged on appeal.

necessarily is dispositive of whether defendant's detention was elevated into an arrest. Indeed, "police officers [who] find themselves in a rapidly developing and dangerous situation presenting an imminent threat to their well-being . . . must be permitted to take reasonable measures to assure their safety and they should not be expected 'to await the glint of steel' before doing so" (*People v Allen,* 73 NY2d at 380, quoting *People v Benjamin,* 51 NY2d 267, 271 [1980]; *see People v Williams,* 305 AD2d at 807). Rather, an investigatory stop may be upheld if the authorities knew that a crime actually had been committed, the total period of the detention was brief, "the police diligently pursued a minimally intrusive means of investigation likely to confirm or dispel suspicion quickly, during which time it was necessary to detain the defendant" (*People v Hicks,* 68 NY2d at 242) and "there is no proof of significantly less intrusive means available to accomplish the same purpose" (*id.* at 243; *see People v Dibble,* 43 AD3d 1363, 1364-1365 [2007], *lv denied* 9 NY3d 1032 [2008]). In our view, that standard was met here.

The testimony at the suppression hearing established that Russom knew that a crime—specifically, an armed robbery—had occurred. Russom also knew that defendant had a prior history of and currently was under investigation for committing similar crimes and that the suspect in this particular robbery displayed what appeared to be a handgun. Defendant was detained in his driveway for approximately 15 to 20 minutes before Moran arrived and observed the axe in the bed of the pickup truck, and an additional 10 to 15 minutes elapsed before Moran obtained the information from the GPS tracking device placing defendant in the vicinity of the robbery, resulting in a total detention of 30 to 35 minutes.[5] The record further reflects that Moran diligently pursued the retrieval of the GPS tracking information which, in turn, quickly confirmed the troopers' initial suspicions. Finally, there is nothing in the record to suggest that the troopers could have both responded to the developing situation and safely ascertained whether defendant was involved in the crime under investigation without detaining defendant in the fashion that they did, particularly considering that they had knowledge of defendant's violent criminal history, his previous escapes from custody and his prior stated intention to use a firearm against police officers.

---

5. Although Moran testified that defendant was not placed under arrest until the information from the GPS device was received, which plainly provided probable cause for defendant's arrest, Moran, unlike Russom, was aware that an axe also had been displayed during the course of the robbery.

Given the facts of this case, we cannot say that the mere pat-frisk of defendant undertaken at the scene was sufficient to dispel the troopers' concerns for their safety and/or neutralize the very real threat that defendant posed to them. Notably, neither Russom nor his partner searched defendant's vehicle at the scene and, therefore, could neither rule out the presence of a weapon therein nor, without handcuffing and physically restraining defendant, ensure that he did not have access thereto. Simply put, the record reveals that the State Police "conducted a lawful investigatory detention, fully supported by reasonable suspicion that defendant had been involved in a violent crime, and this detention was not transformed into an arrest when the [troopers] ordered defendant out of his vehicle, placed him . . . in handcuffs, and [secured him] for approximately 30 minutes, since [each] of these . . . actions [was] justified by the particular exigencies involved in the investigation" (*People v Medina*, 37 AD3d 240, 242 [2007], *lv denied* 9 NY3d 847 [2007]).

As defendant's arrest was supported by probable cause, his suppression motion was properly denied. In light of this conclusion, we need not address defendant's fruit of the poisonous tree claims. Accordingly, the judgment of conviction is affirmed.

Cardona, P.J., Spain and Kane, JJ., concur. Ordered that the judgment is affirmed.