■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v NAKIA ROSE, Appellant. [899 NYS2d 414]—

---

Spain, J. Appeal from a judgment of the County Court of Albany County (Herrick, J.), rendered February 9, 2009, upon a verdict convicting defendant of the crimes of assault in the first degree, robbery in the first degree (two counts), robbery in the second degree, criminal possession of a weapon in the second degree (two counts) and criminal possession of stolen property in the fourth degree.

At about 7:30 P.M. on May 25, 2007, officers with the Albany Police Department responded to a 911 call regarding a shooting on Beverly Avenue in the City of Albany, where they found the victim, Michael Brown, lying on the floor, severely injured and covered in blood from gunshot wounds to his chest and leg. Brown provided a description of his assailants, two black males, who were both armed with handguns and were driving a black BMW X5 SUV with chrome or silver wheel rims. He believed that they were headed to New York City. The police issued an officer safety be-on-the-lookout (hereinafter BOLO) alert for the car and assailants to regional law enforcement. After an astute toll booth collector reported that a vehicle matching the BOLO alert had entered the New York State Thruway and provided a license plate number, a State Trooper observed a BMW X5 matching the BOLO description and bearing that plate number driving southbound on the Thruway north of the City of Kingston, Ulster County. At about 8:12 P.M., State Troopers effected a felony stop of the vehicle, directing the occupants to exit the vehicle and placing them in handcuffs in the rear of separate police vehicles. Troopers spoke by cell phone with an Albany detective who was at an Albany hospital with the victim, who was being treated but fully conscious and confirmed that the clothing and physical description of the occupants of the vehicle matched that of the assailants. The suspects—defendant and Damion Tyrell—were transported to the Kingston State Police barracks around 9:30 P.M. to await the arrival of Albany detectives for questioning.

Detectives arrived at the barracks around 10:20 P.M., provided *Miranda* warnings, and questioned both suspects—who denied any involvement in the shooting, but admitted having been in Albany briefly after giving a girl a ride from New York City. The detectives then transported the suspects and their car back to Albany. Brown identified defendant, who he knew as his drug supplier, and Tyrell, as the shooter, and provided a detailed ac-

count of the shooting and robbery. Brown recounted that his house had reportedly been recently burglarized and a large amount of cash taken, leaving him unable to pay defendant when he came to collect money due for drugs. Defendant was placed under arrest by the detectives in the early morning hours of the following day, and a search of the BMW X5 pursuant to search warrants disclosed two guns, cash and cellular telephones in a hidden compartment in the dash board, and shell casings and other evidence in the vehicle. After an unsuccessful suppression hearing and a jury trial,[1] defendant was acquitted of attempted murder but convicted of assault in the first degree, robbery in the first degree (two counts), robbery in the second degree, criminal possession of a weapon in the second degree (two counts) and criminal possession of stolen property in the fourth degree. Sentenced as a second felony offender to an aggregate prison term of 25 years, plus five years of postrelease supervision, defendant now appeals.

Defendant's central contention on appeal is that the roadside stop of his vehicle and the continued detention of his person exceeded the scope of an investigatory detention and constituted a de facto arrest without probable cause, requiring suppression of all evidence subsequently seized and obtained from the vehicle and from the cell phones, as well as his statement to police and Brown's identification of them. We find that County Court correctly denied defendant's motion to suppress this evidence.

Initially, we find that the vehicle was lawfully stopped by State Police on the Thruway and defendant was lawfully handcuffed and detained for questioning because they had reasonable suspicion that he had been involved in this shooting (*see People v Hicks*, 68 NY2d 234, 238 [1986]; *People v Medina*, 37 AD3d 240, 242 [2007], *lv denied* 9 NY3d 847 [2007]; *People v Baptiste*, 306 AD2d 562, 565 [2003], *lv denied* 1 NY3d 594 [2004]; *see also People v Hollman*, 79 NY2d 181, 184-185 [1992]; *People v Allen*, 73 NY2d 378, 379-380 [1989]; *cf. People v May*, 81 NY2d 725, 727 [1992]). The vehicle closely matched the BOLO alert description given by the victim, was headed toward New York City as the victim indicated it would be, and a prefelony stop check of the license plate number provided by the toll collector disclosed that it belonged to a woman residing

---

1. Defendant and Tyrell were jointly indicted but separately tried, and Tyrell, according to the records of this Court, was convicted of attempted murder and other crimes.

in Bronx County.[2] In determining whether and when the investigatory stop and subsequent detention ripened into the equivalent of an arrest, requiring probable cause, courts look to what a reasonable person in that position, innocent of any crime, would have thought (*see People v Hicks*, 68 NY2d at 238-240; *People v Mabeus*, 68 AD3d 1557, 1560-1561 [2009]).

Upon being stopped, defendant and Tyrell were permissibly ordered to exit their vehicle with their hands up and directed to walk backward to the State Police vehicle; they complied and were patted down and placed in handcuffs in separate police vehicles. Their vehicle was quickly surveyed for other people and weapons (none were found). No guns were drawn, defendant was not questioned, and they awaited the arrival of the State Police supervisor. About 15 minutes later, Albany police were notified that suspects had been stopped and efforts were made to confirm that they matched the victim's description. At the scene of the stop, the State Police supervisor spoke several times with an Albany detective, first when he was en route to the hospital from the scene of the shooting and then when he was with the victim who was being treated at the emergency room. Police then confirmed that the clothing worn by the vehicle occupants matched the victim's by-then more detailed description,[3] and that the suspects matched the physical descriptions provided by the victim to the first responder at the scene of the shooting: two black male assailants, one about six feet tall, with a thin build, 190 to 200 pounds, in his thirties and wearing a blue button-down shirt with long sleeves, and the other about five feet, six inches, stocky, 180 pounds, in his twenties, wearing a red polo shirt with blue and white stripes. The suspects were advised that they were being detained due to an incident that had occurred in Albany, which would be explained by Albany detectives who were en route to question them.

Under these circumstances, this non-arrest detention was within the scope of the lawful investigative stop, during which a shooting was investigated, because State Police knew that a crime had been committed in Albany, the period of detention and investigation was relatively brief given the condition and treatment of the victim and the distance involved, and "the [State] [P]olice diligently pursued a minimally intrusive means

---

2. It was later established that defendant lived with that woman.

3. The victim's description to the first responder included a height, weight and age estimate and that the taller assailant wore a blue shirt and the shorter one wore a red shirt, possibly striped, and a baseball hat. The more detailed description was provided by the victim at the hospital to Albany police, who compared it to the description of the detained suspects provided by State Police.

of investigation [with Albany police] likely to confirm or dispel suspicion quickly, during which time it was necessary to detain . . . defendant" (*People v Hicks*, 68 NY2d at 242; *see People v Mabeus*, 68 AD3d at 1560-1561). Neither the fact that defendant was handcuffed nor any other factor is determinative of whether he was under arrest (*see People v Mabeus*, 68 AD3d at 1560-1561; *People v Williams*, 305 AD2d 804, 806-807 [2003]; *see also People v Hicks*, 68 NY2d at 239-240) because "[w]here, as here, police officers find themselves in a rapidly developing and dangerous situation presenting an imminent threat to their well-being, they must be permitted to take reasonable measures to assure their safety" (*People v Allen*, 73 NY2d at 380). Once State Police established, via communication with Albany detectives at the hospital with the victim, that the suspects matched the description of the assailants, Albany detectives were immediately dispatched to the State Police barracks in Kingston to question the suspects, who had been taken there at the direction of Albany detectives. We agree that the State Police's non-arrest detention of defendant that occurred as part of their felony stop of this vehicle was permissible in scope and duration, the coordinated investigation that occurred at some distance with Albany police to ascertain if they had stopped the correct suspects was diligent, rapid and minimally intrusive, and there was no proof that a significantly less intrusive or more rapid investigatory means was available to accomplish this purpose (*see People v Hicks*, 68 NY2d at 242-243; *cf. People v Banks*, 85 NY2d 558, 562 [1995], *cert denied* 516 US 868 [1995]).

We also find that, once State Police confirmed that the victim's developing description of the physical appearances and clothing of the assailants matched the detained suspects, police in fact had "information sufficient to support a reasonable belief that an offense has been . . . committed [by defendant]" (*People v Shulman*, 6 NY3d 1, 25 [2005], *cert denied* 547 US 1043 [2006] [internal quotation marks and citation omitted]) and, thus, had probable cause to arrest defendant without a warrant (*see* CPL 140.10; *People v August*, 33 AD3d 1046, 1048 [2006], *lv denied* 8 NY3d 878 [2007]; *People v Terry*, 2 AD3d 977, 979 [2003], *lv denied* 2 NY3d 746 [2004]; *People v Baptiste*, 306 AD2d at 566; *see also People v Bigelow*, 66 NY2d 417, 423 [1985]; *cf. People v Robinson*, 282 AD2d 75, 79-81 [2001]; *People v Vaughn*, 275 AD2d 484, 487 [2000], *lv denied* 96 NY2d 788 [2001]). Consequently, defendant's continued detention and transport were lawful. Although defendant was not formally arrested until early the next morning after the victim had positively identified him, his continued detention—the equivalent of an arrest—was supported by probable cause, as required. At no point was defend-

ant questioned by State Police, he was transported to the State Police barracks arriving at 9:45 P.M., and remained handcuffed to a wire wall-ring until Albany detectives arrived at 10:20 P.M. He received *Miranda* warnings at that time from an Albany detective, and he then agreed to waive those rights and to answer questions. Accordingly, as the investigatory stop and non-arrest detention were supported by reasonable suspicion and within permissible bounds, and his continued detention which ripened into his de facto arrest was supported by probable cause, and no constitutional violation of his rights occurred, defendant was not entitled to suppression of any evidence obtained.

Finally, we are not persuaded by defendant's claim that County Court failed to consider all relevant factors in imposing sentence, or that the sentence should be reduced as unduly harsh and excessive. The trial evidence demonstrated that defendant initiated the armed confrontation, accompanied by an apparent enforcer, as part of his drug distribution business over money allegedly due from the victim; moreover, after the victim was forced to lie face down, defendant urged Tyrell to "shoot him in the head." Although defendant was acquitted of attempted murder, the sentencing court's characterization of this shooting as "a cold, deliberate, premeditated business related hit" is unassailable. Thus, we cannot conclude that the aggregate 25-year predicate felon sentence constituted a clear abuse of discretion or that extraordinary circumstances are present to warrant modification (*see People v Sieber*, 26 AD3d 535, 536 [2006], *lv denied* 6 NY3d 853 [2006]).

Mercure, J.P., Rose, Lahtinen and Stein, JJ., concur. Ordered that the judgment is affirmed.