Peters, PJ.
Appeal from a judgment of the County Court of Warren County (Hall Jr., J.), rendered August 16, 2011, convicting defendant upon his plea of guilty of the crimes of criminal possession of a weapon in the third degree and menacing in the second degree.
Defendant was arrested and charged with criminal possession of a weapon in the third degree and menacing in the second degree after waving a gun at two taxicab drivers outside the door of his apartment. County Court denied defendant’s motion to suppress a pellet gun seized from his apartment, concluding that probable cause existed for defendant’s arrest and that the warrantless entry into his apartment was justified by the emergency doctrine. At the ensuing trial, prior to the close of the People’s case, defendant pleaded guilty to the indictment. County Court sentenced him, as a persistent felony offender, to an aggregate prison term of 15 years to life. Defendant appeals.
Defendant’s contention that count one of the indictment failed *1318 to adequately inform him of the nature of the accusations against him is without merit. Such count used the relevant statutory language to charge defendant with criminal possession of a weapon in the third degree and set forth additional information as to the date and location of the offense, thereby alleging “where, when and what” defendant purportedly did (People v Iannone, 45 NY2d 589, 598 [1978]; see CPL 200.50 [7] [a]; People v Young, 100 AD3d 1186, 1188 [2012], lv denied 21 NY3d 1021 [2013]; People v Perez, 93 AD3d 1032, 1034 [2012], lv denied 19 NY3d 1000 [2012]). Because the charged offense can be committed by possessing either an imitation pistol or a dangerous weapon (see Penal Law §§ 265.01 [2]; 265.02 [1]), the failure of the indictment to so specify did not render that count jurisdictionally inadequate (see People v Hagmann, 160 AD2d 1125, 1128 [1990]; People v Nicholas, 35 AD2d 18, 20 [1970]; see also People v Charles, 61 NY2d 321, 327-328 [1984]).
We agree with County Court that exigent circumstances existed to justify the warrantless entry into defendant’s apartment, and that the subsequent seizure of the gun in plain view was lawful. “Appraising a particular situation to determine whether exigent circumstances justified a warrantless intrusion into a protected area presents difficult problems of evaluation and judgment. This difficulty is highlighted by the fact that Judges, detached from the tension and drama of the moment, must engage in reflection and hindsight in balancing the exigencies of the situation against the rights of the accused” (People v Mitchell, 39 NY2d 173, 177 [1976], cert denied 426 US 953 [1976]). Pursuant to the emergency exception to the warrant requirement, the police may make a warrantless entry into a protected area if three prerequisites are met: “(1) The police must have reasonable grounds to believe that there is an emergency at hand and an immediate need for their assistance for the protection of life or property. (2) The search must not be primarily motivated by intent to arrest and seize evidence. (3) There must be some reasonable basis, approximating probable cause, to associate the emergency with the area or place to be searched” (id. at 177-178).[1] The requisite reasonable grounds for the belief that an emergency exists must be based upon objective facts, rather than the subjective feelings of the police *1319 (see id. at 178; People v Musto, 106 AD3d 1380, 1382 [2013], lv denied 21 NY3d 1007 [2013]; People v Greenleaf, 222 AD2d 838, 840 [1995], lv denied 87 NY2d 973 [1996]).
At approximately 9:00 p.m. on an October night, police received a 911 dispatch that a male suspect was pointing a gun at two taxicab drivers outside a residence. Officers arrived at the scene within minutes and surrounded the building. They possessed no description of the perpetrator, learning only that the male suspect had entered the right-side door of the residence. As the police shone the spotlights of their vehicles at the building, an officer observed people moving in the windows on the second floor. Moments later—unprompted by any communications from or demands by the police—a man emerged from the right door of the building. He was instructed to get down on the ground, handcuffed and searched. No weapon was found on him, yet he denied that there was anyone else in the residence. With the right-hand door still open and its interior dark, one officer entered the residence, followed by another, to determine if someone inside was armed or injured.
In our view, the information known to law enforcement rendered it objectively reasonable for the officers to believe that the armed perpetrator could still be inside the building. Although the dissent stresses the fact that the subject building was a multifamily house, thus discounting the officer’s observation of people on the second floor, the evidence adduced at the suppression hearing does not establish that the responding officers had any knowledge of the building’s configuration. To the contrary, both the arresting officer and one of the officers who ultimately entered the apartment testified that, at that point in time, they were unaware of the layout of the building. While further investigation and consideration removed from the exigencies of the situation may have uncovered this fact, “the requirement of reasonable grounds to believe that an emergency existed must be applied by reference to the circumstances then confronting the officer, including the need for a prompt assessment of sometimes ambiguous information concerning potentially serious consequences” (People v Rodriguez, 77 AD3d 280, 291 [2010], lv denied 15 NY3d 955 [2010] [internal quotation marks and citations omitted]; see People v Calhoun, 49 NY2d 398, 403 [1980]). Under the circumstances presented, we are not willing to conclude that the police should have assumed that this individual was the perpetrator and were constitutionally precluded from conducting a protective sweep to ascertain *1320 whether any armed persons were inside (see People v Garcia, 27 AD3d 307, 307 [2006], lv denied 6 NY3d 894 [2006]; People v Rivera, 257 AD2d 425, 426 [1999], lv denied 93 NY2d 901 [1999]; People v Love, 204 AD2d 97, 98 [1994], affd 84 NY2d 917 [1994]; People v DePaula, 179 AD2d 424, 426 [1992]; cf. People v Stevens, 57 AD3d 1515, 1516 [2008], lv denied 12 NY3d 822 [2009]).
As for the remaining two prongs of the emergency doctrine, the officers’ testimony—which County Court found credible— established that entry into defendant’s apartment was for the purpose of ascertaining whether a suspect or other victims were inside. The brevity of the sweep and the fact that the officers did not turn on the lights when they entered further support the finding that the primary motivation was not to conduct a search for evidence. Finally, the victims had identified the right door to the building as the one that the suspect had entered after waving the gun at them, and the officers therefore had a reasonable basis to associate defendant’s apartment with the area to be searched. Accordingly, we find that the police were presented with exigent circumstances justifying their warrant-less entry into defendant’s home (see People v Mitchell, 39 NY2d at 180; People v Musto, 106 AD3d at 1381-1383; People v Rossi, 99 AD3d 947, 949-950 [2012], lv granted 20 NY3d 1066 [2013]).
Once inside, the officers conducted a sweep of what was found to be a small, one bedroom apartment and determined that no one was present. As he was exiting, one officer observed a gun in a holster in a partially opened dresser drawer. While defendant questions this officer’s testimony that his discovery of the weapon was inadvertent, County Court found such testimony to be credible, and we find no basis upon which to disturb that determination (see People v Prochilo, 41 NY2d 759, 761 [1977]; People v Merritt, 96 AD3d 1169, 1170 [2012], lv denied 19 NY3d 1027 [2012]; People v Everett, 96 AD3d 1105, 1106 [2012], lv denied 19 NY3d 996 [2012]). As this officer was lawfully in defendant’s apartment pursuant to the emergency doctrine, the gun was in plain view as he was exiting and its incriminatory nature was readily apparent, seizure of that evidence was lawful (see People v Diaz, 81 NY2d 106, 110 [1993]; People v Spencer, 272 AD2d 682, 683 [2000], lv denied 95 NY2d 858 [2000]; People v Carby, 198 AD2d 366, 366-367 [1993], lv denied 82 NY2d 922 [1994]; People v Cranmer, 167 AD2d 566, 567 [1990], lv denied 77 NY2d 904 [1991]).[2]
We are similarly unpersuaded by defendant’s contention that *1321 his arrest was without probable cause. Probable cause exists where the police have “ ‘information sufficient to support a reasonable belief that an offense has been . . . committed’ by the person arrested” (People v Shulman, 6 NY3d 1, 25 [2005], cert denied 547 US 1043 [2006], quoting People v Bigelow, 66 NY2d 417, 423 [1985]). Hearsay statements may, in whole or part, establish probable cause, so long as the People establish both that the informant was reliable and had some basis for the knowledge transmitted (see People v Ketcham, 93 NY2d 416, 421 [1999]; People v Bigelow, 66 NY2d at 423; see generally Spinelli v United States, 393 US 410 [1969]; Aguilar v Texas, 378 US 108 [1964]). Even hearsay-upon-hearsay may establish probable cause, as “the issue is not the length of the chain but rather whether both prongs of the [Aguilar-Spinelli] test are met at each level” (People v Parris, 83 NY2d 342, 347-348 [1994] [internal quotation marks and citations omitted]).
At the suppression hearing, police officers testified that they responded to a police dispatch that a man was waving a gun at a cab driver. The police dispatcher’s information came from the cab company dispatcher who, in turn, was receiving information directly from a victim. In addition, while at the scene, the officer who was speaking to the victims from a safe distance was providing information to the other officers via radio, including that the victims had observed the suspect enter the right-side door of the building. In both instances, each informant in the chain had a basis for the knowledge transmitted, which originated from the victims’ personal observations of the events described. Moreover, information provided by private citizen informants—such as the taxicab dispatcher and the eyewitness victims—is presumed to be reliable (see id. at 350; People v Hetrick, 80 NY2d 344, 349 [1992]), as is information received from a fellow police officer (see People v Ketcham, 93 NY2d at 420; People v Landy, 59 NY2d 369, 375 [1983]). Thus, both prongs of the Aguilar-Spinelli test were met. When moments later defendant exited from that same right-side door that the perpetrator was observed to have entered, the officers were justified in forcibly detaining him in order to quickly confirm or *1322 dispel their reasonable suspicion that he was the gunman (see People v Allen, 73 NY2d 378, 380 [1989]; People v Hicks, 68 NY2d 234, 240-241 [1986]; People v Stroman, 107 AD3d 1023, 1024 [2013], lv denied 21 NY3d 1046 [2013]; People v Mabeus, 68 AD3d 1557, 1560-1561 [2009], lv denied 14 NY3d 842 [2010]; People v Tillman, 57 AD3d 1021, 1023 [2008]). Once a sweep of the apartment verified that there was no one else present and that there was no other access to the rest of the building, police had probable cause to arrest defendant (see People v Stroman, 107 AD3d at 1024; People v Rose, 72 AD3d 1341, 1345 [2010], lv denied 16 NY3d 745 [2011]; People v Tillman, 57 AD3d at 1023).[3]
Defendant’s remaining contentions do not require extended discussion. County Court did not err in denying defendant’s motion to reopen the suppression hearing, as he failed to establish that the additional evidence he sought to introduce could not have been discovered with reasonable diligence prior to the court’s ruling on the original motion (see CPL 710.40 [4]; People v Wynn, 55 AD3d 1378, 1379 [2008], lv denied 11 NY3d 901 [2008]; People v King, 170 AD2d 710, 712 [1991], lv denied 77 NY2d 997 [1991]). Finally, we find no support for defendant’s claim that he was punished for asserting his right to trial. Although the pretrial plea offer rejected by defendant would have resulted in a significantly lighter sentence, defendant received the minimum permissible sentence upon the court’s decision to sentence him as a persistent felony offender (see Penal Law §§ 70.00 [3] [a] [i]; 70.10 [2]). That determination was made after fully exploring the details of defendant’s extensive criminal history—which included 37 arrests resulting in 28 convictions, 10 of which were for felonies—and after having heard the victims’ testimony as to how defendant’s actions had put them in fear for their lives. Under these circumstances, we will not disturb defendant’s sentence (see People v Wicks, 73 AD3d 1233, 1236-1237 [2010], lv denied 15 NY3d 857 [2010]; People v Jenner, 39 AD3d 1083, 1088 [2007], lv denied 9 NY3d 845 [2007]).
Stein and Egan Jr., JJ, concur.

. The United States Supreme Court has eliminated the second factor for 4th Amendment purposes (see Brigham City v Stuart, 547 US 398, 404-405 [2006]), and the Court of Appeals has had no occasion to consider whether this factor remains viable under the NY Constitution in light of that decision (see People v Doll, 21 NY3d 665, 671 n [2013], cert denied 572 US —, 134 S Ct 1552 [2014]; People v McBride, 14 NY3d 440, 447 n [2010], cert denied 562 US —, 131 S Ct 327 [2010]; People v Dallas, 8 NY3d 890, 891 [2007]). The issue *1319 need not be determined here since, in our view, the police were presented with an emergency situation under both standards.

. This officer testified that he exited the apartment briefly to obtain a camera so that he could take a picture of the gun before seizing it. To the *1321 extent that defendant now argues that this subsequent entry into the apartment to effectuate the seizure was constitutionally impermissible, he failed to preserve this issue for our review (see CPL 470.05 [2]; People v Dancey, 57 NY2d 1033, 1034-1035 [1982]; People v Crawford, 61 AD3d 773, 774 [2009], lv denied 13 NY3d 743 [2009]). In any event, his contention lacks merit (see People v Myrtetus, 43 NY2d 758, 759-760 [1977]; People v Daniels, 97 AD3d 845, 849 [2012], lv denied 20 NY3d 931 [2012]; People v Desmarat, 38 AD3d 913, 915 [2007], lv denied 9 NY3d 842 [2007]; People v George, 7 AD3d 810, 811 [2004], lv denied 3 NY3d 674 [2004]).

. As the People established probable cause for defendant’s arrest based upon the testimony adduced at the initial suppression hearing, County Court’s decision to grant the People’s motion to reopen the hearing for presentation of further proof on this issue did not, as defendant asserts, have the effect of “afford[ing] the People a second chance to succeed where once they had tried and failed” (People v Havelka, 45 NY2d 636, 643 [1978] [internal quotation marks and citation omitted]).