■ THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v LARRY HINES, Respondent. — Order, Supreme Court, New York County (S. Levittan, J.), orally rendered June 11, 1981, written decision December 9, 1981, is reversed, on the law and the facts, and the motion to suppress the physical evidence consisting of bullets and a pistol, is denied, and the matter remanded to Trial Term for further proceedings. (Previous decision, see *People v Hines,* 97 AD2d 743.) ¶ On December 6, 1980 at approximately 10:40 P.M., two police officers assigned to the street crime unit, in plain clothes, in an unmarked car, saw a car with the defendant in it at 112th Street near the corner of Eighth Avenue in Manhattan. Defendant's car, a station wagon, had its headlights off and its engine running. It bore bent or mangled Maryland license plates. The officers testified that they saw the driver (defendant) looking back directly to the corner of 112th Street and Eighth Avenue, and then defendant's station wagon began to move forward about 100 feet or so with the lights still out. The officers pulled up alongside defendant's car. Defendant seemed to have some difficulty with the window of the car, but then he opened the door of the car; the officers asked what he was doing there, and he said that he had dropped off a friend. The officers asked for his license and car registration and then backed up their car to the rear of the station wagon. One of the officers saw defendant make some motion with his hands, which he described as bending to the right front floorboard area of the vehicle. ¶ The hearing court did not credit the testimony about the defendant bending as far as the floorboard area, although the court thought it was possible that the officer saw defendant lean over toward the front passenger's side. ¶ Defendant having gotten out of his station wagon, the officers again asked for his license and registration. Defendant did not have the registration on his person but said that it was probably in the glove compartment, and then attempted to reach into the vehicle. The officers stopped him from this; they instructed the defendant to stand between the two officers, and one of the officers got into the car and there saw three bullets in a plastic tray atop the transmission hump in the front floor area. The officer reached under the front passenger's seat and took out a pistol. The glove compartment contained a bullet or bullets. Defendant was arrested. ¶ The trial court found that there was no justification for entering and reaching into the vehicle and conducting a visual search of its interior. We do not agree. ¶ This was 10:40 at night in a high-crime area. Indeed, defendant's attorney himself described the area of 112th Street and Eighth Avenue as having "the highest crime rate in the city." The officers described it as a very high robbery and narcotics location. The officers suspected a possible robbery or a narcotics transaction. Their suspicions were aroused by the vehicle violations, the condition of the plates, the defendant's unfamiliarity with the car, driving with the headlights off, being unfamiliar with the fact that the window was not working, the officers' expertise from the past, and the defendant's actions when he was bending over. That suspicion, and what one of the officers described as his fear, caused them to take the actions that they did. ¶ While the hearing court said that there was no credible evidence that either detective believed or had reason to believe that he or his partner was in danger, we still think the action of the officers was reasonable. The presence or absence of subjective fear on the part of the police officer should not be decisive; even a subjectively fearless police officer is not forbidden to take reasonable and sensible precautions for his own safety. The suspicion of possible criminal activity in all the circumstances was not unreasonable. The possibility that there might be a weapon was not wholly fanciful. What the Supreme Court said in *Terry v Ohio,* (392 US 1, 28) is largely applicable here: "The actions of [defendants] were consistent with [the officer's] hypothesis that these men were contemplating a day-light robbery — which, it is reasonable to assume, would be likely to

involve the use of weapons — and nothing in their conduct from the time he first noticed them until the time he confronted them and identified himself as a police officer gave him sufficient reason to negate that hypothesis." And we may take judicial notice (from our own judicial experience) that persons who are engaged in narcotics transactions in this city, at least above the level of the street corner seller, are frequently armed. The defendant was about to reach into the car where the police officers suspected the possibility of a weapon. ¶ The Supreme Court has "specifically recognized the inordinate risk confronting an officer as he approaches a person seated in an automobile. 'According to one study, approximately 30% of police shootings occurred when a police officer approached a suspect seated in an automobile' * * * Indeed, it appears 'that a significant percentage of murders of police officers occurs when the officers are making traffic stops.' " (*Pennsylvania v Mimms,* 434 US 106, 110.) ¶ In *Pennsylvania v Mimms (supra),* the Supreme Court sustained the action of the police officers in ordering an occupant of a car to step out of the car as part of reducing the danger to the police officers. We see little difference between that and not permitting the occupant to go back into the car for a moment before the police officers checked to make sure that there was no weapon. It was a minimal intrusion (*supra,* at p 111) for the officers to make this brief investigation of the car for their own safety before letting the defendant reach back into the car. This limited search was "not to discover evidence of crime, but to allow the officer to pursue his investigation without fear of violence" (*People v McLaurin,* 56 AD2d 80, 84 [dissenting opn], revd on dissenting opn 43 NY2d 902). Concur — Kupferman, J. P., Sullivan, Asch and Silverman, JJ.

Milonas, J., dissents in a memorandum as follows: In my opinion, the order appealed from should be affirmed. ¶ On the night of December 6, 1980, the defendant was seated in an automobile bearing Maryland license plates when he attracted the attention of two plainclothes police officers who were driving an unmarked car. At the time, the defendant's vehicle, its motor running and the headlights off, was parked at the curb. Since the area involved was a high narcotics and robbery neighborhood, the suspicions of the officers were aroused when the defendant purportedly glanced over his shoulder and moved the vehicle forward alongside the curb. The officers proceeded to pull up near the defendant's automobile. In response to an inquiry by one of the policemen, the defendant asserted that he had just dropped off a friend and was endeavoring to locate his cousin's house. He was then requested to produce his license and registration. Although one of the officers stated at the suppression hearing that he observed the defendant make a motion in the direction of the right floorboard, the court did not credit this testimony. At any rate, the defendant exited his automobile and was again asked for his license and registration. The defendant claimed that they were probably in the glove compartment but as he reached back inside the car, he was ordered to step away from the vehicle. One of the officers got into the car and there noticed three bullets lying in a plastic tray on the transmission hump of the front floorboard. He then searched the vehicle and removed a gun from under the front passenger seat. ¶ In *People v Sobotker* (43 NY2d 559), two policemen, dressed in plain clothes and seated in an unmarked car, were on watch in an area where several burglaries had recently been reported when they observed a Buick automobile proceeding slowly toward the next intersection. On the way to the corner, at a point at which the vehicle was opposite a certain bar, it slowed down to pause briefly, and the Buick's three occupants were seen to turn their heads in the direction of the bar. Continuing on, the automobile came to a standstill at a stop sign. The three men then supposedly glanced toward a second bar. Thereupon, the police forced the vehicle over to the curb. The defendant, who was the driver of

the car, stepped out and, in response to the police request for his driver's license, informed them that he did not possess one. The passengers were ordered out of the car and an ensuing "pat-down" of one of them resulted in the discovery of five bullets. A contemporaneous search of the car revealed a gun under the front seat. The Court of Appeals reversed the judgment therein, holding (p 563) that "except for routine checks to enforce automobile regulations (which neither side contends was the case here), our repeated decisions make abundantly clear that, absent at least a *reasonable* suspicion that its occupants had been, are then, or are about to be, engaged in conduct in violation of law, the stopping of an automobile by the police constitutes an impermissible seizure'. According to the court (p 564), " 'reasonable suspicion' " must be more than subjective and may not be founded merely on a " 'hunch' " or a " 'gut reaction' ". Therefore, as the Court of Appeals declared (at p 564): "By itself, the seemingly innocuous act of the defendant and his companions in glancing at a bar, even if it could be argued that they were then driving through a 'high crime neighborhood', did not reasonably denote criminal conduct". ¶ The conduct of the occupants of the Buick in *People v Sobotker* (*supra*) was, if anything, more questionable than that of the defendant in the instant situation. Other than the officers' unsupported suspicions that the defendant herein might be engaged in some sort of criminal activity, the record is completely devoid of any facts which would justify the warrantless search which occurred. Even assuming that the police were warranted in approaching the defendant and demanding to see his license and registration, there is still no basis to reject the hearing court's findings of facts and conclusions of law. Driving an automobile with out-of-State license plates and glancing over one's shoulder while driving slowly alongside a curb in a high-crime area are scarcely reliable indices of criminal conduct. The defendant complied with all of the commands made by the police officers. Indeed, the police did not even permit him the opportunity to attempt to procure his license and registration. The officers had no articulable reason to believe that the defendant had committed, or was in the process of committing, a crime or that they were in any physical danger from him. Moreover, the court rejected the police contention that the defendant, while seated in his automobile, made a motion toward the floorboard; it also did not accept the police claim that the bullets were in plain view. Since the search conducted in the instant matter was clearly not incidental to a lawful arrest, and it certainly did not constitute a custodial search (see *People v Smith,* 59 NY2d 454; *People v Belton,* 55 NY2d 49), the hearing court appropriately granted the motion to suppress.