■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JAMES BARRETT, Appellant. [787 NYS2d 321]—

Judgment, Supreme Court, New York County (James A. Yates, J.), rendered September 16, 2003, convicting defendant, upon his plea of guilty, of criminal possession of a controlled substance in the third degree, and sentencing him to a term of 1 to 3 years, affirmed. The matter is remitted to Supreme Court, New York County, for further proceedings pursuant to CPL 460.50 (5).

The court properly denied defendant's suppression motion. Although the hearing court discredited some of the police testimony, it was entitled to accept other portions of such testimony that it found to be true (*see People v Pacifico,* 95 AD2d 215 [1983]). "[T]he maxim falsus in uno falsus in omnibus . . . is permissive only—not mandatory . . ." (*People v Becker,* 215 NY 126, 144 [1915]). While the People had the burden of coming forward with credible evidence, those portions of the evidence that the court credited satisfied that burden.

The police had reasonable suspicion to believe that a drug transaction was about to take place, since a sergeant overheard a man at a drug-prone location placing an order for drugs, using a slang term with which the sergeant was familiar. The hearing court properly exercised its discretion in permitting the sergeant to testify on rebuttal even if his testimony should have been part of the People's direct case (*see e.g. People v Alvino*, 71 NY2d 233, 247-248 [1987]).

The degree of force used by the police was not unreasonable. "[P]ersons who are engaged in narcotics transactions . . . are frequently armed" (*People v Hines*, 102 AD2d 713, 714 [1984]), and police approaching a suspect seated in an automobile are in a dangerous position (*Pennsylvania v Mimms*, 434 US 106, 110 [1977]). Since the police were approaching a car which contained two drug suspects and which had darkly tinted windows that prevented the police from seeing if the occupants were armed, it was reasonable for them to approach with guns drawn and pull the occupants out of the car (*see e.g. People v Finlayson*, 76 AD2d 670, 678-681 [1980], *lv denied* 51 NY2d 1011 [1980], *cert denied* 450 US 931 [1981]; *United States v Lechuga*, 925 F2d 1035, 1040 [7th Cir 1991]), an action that revealed the presence of drugs where defendant had been sitting.

We have considered defendant's remaining arguments and find them unavailing. Concur—Saxe, J.P., Nardelli and Gonzalez, JJ.

Ellerin and Catterson, JJ., dissent in a memorandum by Catterson, J., as follows: While we agree with the majority that the officers had reasonable suspicion to approach the car, we do not agree that the officers' subsequent actions were reasonable and justified, as the level of intrusion upon defendant's rights required nothing short of probable cause.

Defendant was charged by indictment with possession of cocaine and heroin. He moved to suppress the evidence against him on the ground that his constitutional rights had been violated. Following a hearing, this motion was denied and defendant pleaded guilty to criminal possession of a controlled substance in the third degree. Contrary to the majority's view, we find that the hearing court erred in denying defendant's motion to suppress.

The hearing court found that on the afternoon of January 25, 2003, an individual named Scott Davidson caught the eye of Sergeant Edward Thompson in a drug-prone location. When Davidson was on the phone, Sergeant Thompson, wearing plainclothes, positioned himself nearby and heard Davidson say "[a]re you in the area? I want ladies. Can we meet up on Sixth

Avenue?" As Davidson proceeded to walk north on Sixth Avenue, Sergeant Thompson followed on foot and Police Officer Martin Denehy, also in plainclothes and in an unmarked "taxi" police car, followed them both. About a half-hour later, after Davidson had several other phone conversations, Sergeant Thompson heard Davidson say over the phone "[o]kay, I see you now," and watched as Davidson walked over to defendant's car and got in. Sergeant Thompson then joined Officer Denehy in the unmarked police car and they followed defendant and Davidson.

They followed defendant's car to a stop light. When defendant's car stopped at the light, Sergeant Thompson, with his shield displayed, exited his vehicle and approached the passenger side of defendant's car where Davidson was sitting. Sergeant Thompson had his gun exposed, but not drawn. Officer Denehy, however, approached the driver's side where defendant was sitting, with his gun drawn and shield displayed. Officer Denehy then put his gun to defendant's window and pulled on the door handle. At that moment one of the officers yelled at the occupants to "get the fuckin' doors open." They complied, at which point the police pulled both defendant and Davidson out of the car and to the ground. At that point, the narcotics were observed in the car. Defendant was handcuffed, both were arrested and the car was searched.

At the hearing, the officers testified that they saw through the windows of the car as they approached the vehicle. Sergeant Thompson said he could see an exchange of money and Officer Denehy testified that he could see a golf-ball sized package containing what appeared to be cocaine on the driver's seat. The court discredited the testimony based on personal inspection of the car in question and concluded that the officers could not have seen what they testified they observed given the dark tinted windows on the vehicle.

The court ultimately concluded that the officers had reasonable suspicion that a drug sale was occurring at the time they approached the car due to Sergeant Thompson's observations of Davidson prior to Davidson entering defendant's car. Such suspicion, according to the court, gave them the right to open the car doors and remove the defendant and Davidson for further investigation and questioning. The court found that because there were two people in the car, the windows were tinted, and there was possibly a drug sale occurring, the officers had the right to be in fear for their safety which justified Officer Denehy's approach with his gun drawn. After the occupants were removed, the narcotics were observed, justifying the arrest of defendant and the search of the car.

We disagree. "Whenever an individual is physically or constructively detained by virtue of a significant interruption of his liberty of movement as a result of police action, that individual has been seized within the meaning of the Fourth Amendment." (*People v Cantor*, 36 NY2d 106, 111 [1975].) There can be little doubt that what occurred here was a seizure. The legality of this seizure "depends on the presence of probable cause or whether it fits within the narrow exception carved out by the Supreme Court in *Terry v. Ohio* (392 U. S. 1)." (*People v Cantor*, 36 NY2d at 110.) If there is no probable cause, the question becomes whether the action was justified in its inception and whether the intrusion was reasonably related in scope and intensity to the circumstances "which rendered its initiation permissible." (*People v De Bour*, 40 NY2d 210, 222 [1976].) Furthermore, "any inquiry into the propriety of police conduct must weigh the interference it entails against the precipitating and attending conditions . . . . [V]arious intensities of police action are justifiable as the precipitating and attendant factors increase in weight and competence." (*Id*. at 223.)

In this case, the people do not argue that the police had probable cause and the hearing court made no such finding. The court found that the police had a reasonable suspicion that Davidson was about to buy drugs. Such suspicion authorizes the officers to stop and detain Davidson temporarily for questioning and would have allowed the police the authority to frisk Davidson, if not defendant as well, if the officers reasonably suspected that they were in physical danger at that point.* (*Id*. at 223.) The officers, therefore, had the right to approach the vehicle. But for Officer Denehy to approach with his gun drawn and to point that gun at the driver's side window, essentially at defendant's head or body, and to then pull on the door and ultimately forcibly pull defendant out of the car and to the ground, was not reasonable under the circumstances without probable cause.

The narrow exception carved out by the Supreme Court in *Terry v Ohio* (392 US 1 [1968]) to the probable cause requirement allows for a balancing test to be utilized to determine the propriety of a seizure based upon reasonable suspicion only because the intrusions involved fall far short of the intrusion involved with an arrest. (*Dunaway v New York*, 442 US 200,

---

* The court's conclusion that the police had a right to draw their weapons is at odds with the officers' testimony that they could see through the windows, as their testimony makes clear that there was no immediate threat to their safety based upon what they observed happening in the car at the time they approached the vehicle.

211-212 [1979].) The police officers' actions in this case go far beyond a limited stop for questioning and a corresponding frisk or pat-down search for weapons. Indeed, the police never even asked one question of defendant or of Davidson before pointing a gun at defendant and physically detaining or restraining them. While the detention was brief, it was highly intrusive and indistinguishable from the traditional arrest, and was without any probable cause. In fact, the police had no real knowledge at that point that defendant was the person with whom Davidson had been conversing about "ladies." The last conversation that Sergeant Thompson overheard Davidson have was presumably with defendant as Davidson entered defendant's car directly after saying to that person on the phone that he "s[aw him] now." Also, the location of the pickup was in the general vicinity of where Davidson wanted to meet the person with whom he had been discussing "ladies." But defendant did not meet Davidson until about a half-hour after Davidson had that conversation. In addition, in the interim, Davidson had had several other phone conversations with one or more unknown individuals. It was therefore the barest of reasonable suspicion that the officers were armed with as they approached the vehicle. And, while it is clear that any encounter with perpetrators of drug sales can be dangerous as such criminals are frequently armed, such force as used in this instance went beyond that which was necessary for the officers' safety.

The stop went beyond its permissible scope of detaining for questioning. There was no such questioning before the police pointed a gun at defendant, pulled on the doors and demanded in what can only be considered as a threatening command, that they be opened. Furthermore, there were no escalating attendant circumstances to propel the bare reasonable suspicion to a level of probable cause to support the overly intrusive actions of the officers in pointing a gun at defendant's head or body and dragging him out of the car to the ground. As we cannot consider this to be a limited *Terry* stop and as there is no probable cause to support the officers' actions, we dissent and would suppress the evidence.