Schoenfeld, J.
(dissenting). I respectfully dissent. The self-contradictory and confusing testimony of the arresting officer entitled the trial judge to find that there was no probable cause for defendant Larry Greer’s arrest. The defendant’s motion to suppress the evidence was therefore properly granted. The decision below should be affirmed.
The People appeal from an order of the Criminal Court of the City of New York, Bronx County, which granted a motion by defendant to suppress evidence and statements.
Defendant, arrested on September 27, 2008 and charged with driving under the influence of alcohol pursuant to Vehicle and Traffic Law § 1192 (1), moved to suppress statements, physical evidence and the breathalyzer results, claiming that the police lacked probable cause to arrest him.
At a June 30/July 1, 2009 Mapp/Huntley/Dunaway hearing to determine defendant’s motion on whether the evidence should be suppressed, Police Officer Andrew Ulich was the sole testifying witness. After the hearing, the court issued a decision granting the defendant’s motion on the ground that the officer’s testimony was “inconsistent, confusing, vague, tailored and not credible,” and therefore did not establish probable cause. Specifically, the court wrote: “this court finds that the witness’s observation of the smell of alcoholic beverage between cars and unsteady gait taken with inconsistent testimony does not arise to probable cause to arrest.”
“[M]uch weight must be accorded the determination of the suppression court with its peculiar advantages of having seen and heard the witnesses.” (People v Prochilo, 41 NY2d 759, 761 [1977].) An appellate court will not substitute its own findings on credibility for those of the trial court unless “the fact findings under review are plainly unjustified or clearly erroneous.” (People v Clough, 70 AD3d 474, 474 [1st Dept 2010].) “The credibility determinations of the hearing court will not be disturbed where there is support in the record for such *4 determinations.” (People v Hardie, 64 AD3d 666, 667 [2d Dept 2009].) Moreover, it is for the factfinder to determine how much if anything to believe from a witness. (People v Barrett, 14 AD3d 369 [1st Dept 2005].)
The question of probable cause requires a consideration of law and fact. “Determination of the facts and circumstances bearing on the issue, which hinges primarily on questions of witness credibility, is a question of fact.” (People v Morales, 42 NY2d 129, 134 [1977].) It is, however, a question of law whether the facts, as apprehended by the factfinder, are sufficient to constitute probable cause. (Id.)
Officer Ulich’s testimony on direct examination appears credible, but as it proceeds into cross-examination, there are many inconsistencies on key issues to justify a finding that he was wholly unpersuasive. Further, because he is a seasoned officer, he would know the “magic” words to establish probable cause. In such a circumstance, and where there are so many inconsistencies in the testimony, the trial judge has to look closely at what appears to be “tailored” testimony to make a credibility determination.
The officer’s testimony as to when and whether he searched the defendant’s vehicle is so littered with inconsistencies that it undermines the credibility of his memory of that morning. Officer Ulich testified in no uncertain terms that after he arrested defendant and placed him in the patrol car, he searched the defendant’s car and found a half-empty bottle of Hennessy:
“Q: When the defendant was place [sic] under arrest, what did you do next?
“A: Searched his motor vehicle.” (Tr 14:9-10.)
“Q: Officer Ulich, after you found the bottle of Hennessy, what did you do next.
“A: We took the defendant to the 45th precinct.”
(Tr 18:16-18.)
On cross, the officer’s story gets less certain and more complicated. In fact, on cross-examination, the officer admits that he is not sure when he did the search. He cannot recall whether he searched the vehicle at the scene or at the precinct:
“Q: When you placed my client under arrest and put him in the police cruiser, at that point you undertook the search of his car?
“A: It was at a later time, but I am not sure if I did it like right there at the scene or if I drove the car *5 back, to my — when you arrest a DWI individual, you take your car back to the precinct . . . So I am not sure if I searched it right there at the scene or if I drove it back to the precinct.” (Tr 50:2-12.)
Despite this admission of his failure to recall when he found the bottle, the officer goes on to contradict his previous testimony and state that he discovered the bottle of Hennessy when he drove the defendant’s vehicle back to the precinct:
“Q: After the defendant was placed in handcuffs what did you personally do next?
“A: He was placed in the rear of the RMP [radio motor patrol car], the unmarked RMP and then I drove in his vehicle and drove back to the precinct, followed by my partner. Then I got back into the RMP and went back to the 45th precinct.
“Q: And at the time you were driving to the precinct, is that the first time that you saw the bottle of Hennessy?
“A: Yes.” (Tr 61:1-11.)
He offers an additional and differing version of his search of defendant’s vehicle. This time he remembers sitting in the back of the RMP with defendant on the way to the precinct and performing the search of defendant’s vehicle at the precinct:
“Q: And somebody took the vehicle, his vehicle back to the 45th or your precinct.
“A: Yes.
“Q: And at the precinct it undergoes a search for evidence, would you agree?
“A: Yes.
“Q: And officer, did you perform that search?
“A: Yes.” (Tr 53:6-14.)
To add one additional version of the story, the officer testified that he searched the vehicle after the defendant took the breathalyzer test. (Tr 62:6-8.)
Officer Ulich also contradicts himself when he testified about what occurred at the scene. On direct, he testified that after observing defendant, he arrested him at the scene; he handcuffed defendant and placed him in the patrol car. Later, he testified that he did not arrest defendant at the scene, but was simply doing an investigation when he placed defendant in the patrol car.
On direct examination, the officer testified that he arrested defendant at the scene:
*6 “Q: And when you engaged the defendant in that conversation, were you able to make any observations as to the defendant at that time?
“A: Yes. The defendant had blood-shot eyes, watery eyes, and I had smelled the odor of the alcohol beverage, and he had a sagging gait when he got out of the vehicle, and I placed the defendant under arrest for driving the vehicle in an intoxicated condition.” (Tr 13:5-13.)
In contrast, during cross-examination, he testified that he did not arrest defendant at the scene:
“Q: So it is your testimony that he was under arrest in the back of the cruiser, and a search of the car was undertaken?
“A: Well, at that point it’s more of an investigation still, because as I understood it, if he blows under the legal limit like if he blows and he blows like zero, then he would be released, so it would be just a summons.
“Q: I would just caution you one more time. So listen to my question carefully.
“A: Yes.
“Q: And answer just this specific fact I am looking for in my question. He is under arrest. You searched the car?
“A: Well, no he is not particularly under arrest yet.” (Tr 50:15-25, 51:1-6.)
Based on this testimony, the trial judge was justified in wondering why there were two versions as to when Ulich placed the defendant under arrest. If the officer observed the watery, bloodshot eyes, the sagging gait and smelled alcohol on defendant’s breath, why wouldn’t he have arrested defendant at that point? It is not clear why the officer is having doubts about his own conduct that morning. The testimony, because of these conflicts, raises questions as to whether the officer is testifying from memory or reconstructing the story on the stand. Ultimately, these discrepancies raise questions about what the officer observed that morning with respect to the defendant’s condition.
His testimony with respect to when he first spoke to defendant is also inconsistent, raising questions about whether he had grounds to ask the defendant to step out of his vehicle. On direct, the officer testified that “I got out of my RME I had the *7 defendant get out of the vehicle, and I engaged him in a brief conversation.” (Tr 13:2-4.) While on cross, he testified: “WTien I talked to him I could smell alcohol coming from his breath, so I had him come out of the car.” (Tr 44:19-21.)
In addition, the officer’s testimony is inconsistent with regard to when he smelled alcohol on the defendant. He first testified that he was able to “smell the odor of the alcoholic beverage coming from the vehicle” at the time he and his partner pulled up next to the vehicle. (Tr 12:15-17.) Later, he testified that when he pulled over “I smelled alcohol but wasn’t close enough to actually see if it was from him.” (Tr 44:14-16.)
The trial judge assessed the credibility of Officer Ulich firsthand. The court found that the myriad inconsistencies in his testimony undermined his credibility with respect to his description of defendant’s condition that morning and that there were therefore no facts upon which to base a finding of probable cause. Although the trial court also found it important that the officer did not use roadside coordination tests or a portable breathalyzer or that the officer was not trained to identify intoxicated individuals, this court does not find those issues compelling. Nonetheless, based on the officer’s testimony, it appears that the findings of the lower court were not clearly erroneous and the decision should therefore be affirmed.
McKeon, EJ., and Shulman, J., concur; Schoenfeld, J., dissents in a separate opinion.