People v Wheeler (2018 NY Slip Op 01509)





People v Wheeler


2018 NY Slip Op 01509


Decided on March 8, 2018


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: March 8, 2018

108065

[*1]THE PEOPLE OF THE STATE OF NEW YORK, Respondent,
v
WILLIAM WHEELER, Appellant.

Calendar Date: January 10, 2018

Before: McCarthy, J.P., Devine, Aarons, Rumsey and Pritzker, JJ.


Salvatore Adamo, Albany, for appellant.
P. David Soares, District Attorney, Albany (Vincent Stark of counsel), for respondent.


Pritzker, J.

MEMORANDUM AND ORDER
Appeal from a judgment of the County Court of Albany County (Lynch, J.), rendered December 2, 2015, upon a verdict convicting defendant of the crimes of criminal possession of a controlled substance in the first degree and criminal possession of a controlled substance in the third degree.
During the search of a vehicle in which defendant was a passenger, police officers located a backpack containing a large quantity of cocaine and marihuana. Defendant was subsequently indicted on charges of criminal possession of a controlled substance in the first and third degrees and, following a jury trial, he was convicted as charged. He was sentenced, as a second felony drug offender, to prison terms of 15 years followed by five years of postrelease supervision upon his conviction of
criminal possession of a controlled substance in the first degree, and 12 years followed by three years of postrelease supervision upon his conviction of criminal possession of a controlled substance in the third degree, the sentences to run concurrently. Defendant now appeals.
Defendant contends that the verdict is not supported by legally sufficient evidence and is against the weight of the evidence because the People failed to establish that he knowingly possessed the cocaine and did so with the intent to sell. As relevant here, "[a] person is guilty of criminal possession of a controlled substance in the first degree when he or she knowingly and unlawfully possesses . . . one or more preparations, compounds, mixtures or substances containing a narcotic drug and said preparations, compounds, mixtures or substances are of an aggregate weight of eight ounces or more" (Penal Law § 220.21 [1]). "[A] person is guilty of criminal possession of a controlled substance in the third degree when he [or she] knowingly and [*2]unlawfully possesses . . . a narcotic drug with intent to sell it" (Penal Law § 220.16 [1]).
At trial, a police investigator testified that, in December 2013, he was outside of 575 Washington Avenue in the City of Albany with agents of the Rensselaer County Sheriff's Office, the Drug Enforcement Agency (hereinafter DEA), the City of Albany Police Department, the State Police and the Department of Homeland Security when he observed a Honda pull up to the opposite side of the street. The investigator observed defendant exit the vehicle with a blue and black backpack, enter the residence and then return to the passenger seat of the Honda carrying the same backpack, after which the vehicle drove away. Upon hearing a radio dispatch relaying these facts, two police officers followed the vehicle and pulled it over after observing various traffic infractions. The officers testified that they smelled marihuana upon approaching the vehicle, ordered defendant and the driver to step outside and then initiated a search of its interior. During the search, the officers located a backpack behind the front passenger seat of "the same color and approximate size" as the one that defendant carried out of 575 Washington Avenue that contained a large quantity of what appeared to be marihuana and cocaine.
A forensic chemist confirmed that one of the substances was pure, unadulterated, cocaine hydrochloride with a net weight of 549 grams and revealed that it was separately packaged in six "knotted clear plastic bags." Moreover, a special agent who conducted investigations with the Department of Homeland Security approximated that the total value of 549 grams of cocaine would have been between $50,000 and $54,900 in December 2013, and that quantity plays a large role in determining whether the possession is for personal use or distribution purposes. The People also elicited testimony from the driver of the Honda, who revealed that, when he and defendant were at the Albany County Jail on the underlying charges, he told defendant that defendant "needed to get [him] out of this situation [because he] ha[d] nothing to do with it," to which defendant replied, "don't worry about it, I got this, I'll take care of you, I'll make sure that you won't get in any trouble." The driver maintained that defendant asked him to "take the charges" during a subsequent conversation.
When viewing this evidence in the light most favorable to the People (see People v Bleakley, 69 NY2d 490, 495 [1987]; People v Collier, 146 AD3d 1146, 1150 [2017], lv denied 30 NY3d 948 [2017]), we find that legally sufficient evidence was provided as to the knowing element of criminal possession of a controlled substance in the first degree by the combination of, among other proof, the 549 grams of cocaine found in the backpack that defendant was observed carrying out of the residence and his statements to the driver of the Honda that were indicative of his consciousness of guilt. Moreover, the manner in which the cocaine was packaged, coupled with its weight and substantial street value, permitted a rational inference that defendant possessed the cocaine with the intent to sell, which supports his conviction of criminal possession of a controlled substance in the third degree (see People v Williams, 150 AD3d 1315, 1318-1319 [2017], lv denied 30 NY3d 984 [2017]; People v Whitehead, 130 AD3d 1142, 1145 [2015], affd 29 NY3d 956 [2017]). As to the weight of the evidence, we conclude that a different verdict would have been unreasonable under the circumstances and therefore reject this claim outright (see People v Hadfield, 119 AD3d 1224, 1226 [2014], lv denied 24 NY3d 1002 [2014]; People v Collins, 288 AD2d 756, 758 [2001], lv denied 97 NY2d 752 [2002]).
Next, County Court did not err in denying defendant's motion to suppress the physical evidence. Defendant maintains that the police lacked reasonable suspicion to seize him at gunpoint given that they had observed only two traffic violations (see People v De Bour, 40 NY2d 210, 223 [1976]). The testimony at the suppression hearing, however, reveals otherwise. While the mere observation of the two traffic infractions, and nothing more, would not have justified a gunpoint stop (cf. People v Moore, 6 NY3d 496, 498-499 [2006]), this issue cannot be [*3]analyzed in isolation from the surrounding circumstances. Indeed, shortly before the officers were informed by the radio dispatch that defendant had exited the premises at 575 Washington Avenue with a backpack and began following the vehicle, they received a request from DEA agents to help assist in executing a search warrant at the premises. Mindful that "persons who are engaged in narcotics transactions are frequently armed" (People v Barrett, 14 AD3d 369, 370 [2005] [internal quotation marks, brackets, ellipsis and citation omitted]), and given the testimony from one of the officers that he drew his weapon for safety purposes based upon information that he had obtained from DEA agents, we cannot conclude that the brief show of force was unreasonable or that the officers lacked reasonable suspicion to believe that defendant was engaged in criminal activity (see People v Moore, 6 NY3d 496, 498-499 [2006]; People v Barrett, 14 AD3d at 370; People v Williams, 305 AD2d 804, 806 [2003]; cf. People v Mabeus, 68 AD3d 1557, 1560-1561 [2009], lv denied 14 NY3d 842 [2010]). Finally, based upon the officers' information and upon smelling marihuana emanating from the vehicle, there was probable cause to search "'every part of the vehicle and its contents that may conceal the object of the search'" (People v Horge, 80 AD3d 1074, 1075 [2011], quoting United States v Ross, 456 US 798, 825 [1982]).
Defendant also maintains that County Court erred in denying his motion to dismiss the indictment pursuant to CPL 30.30 because the waiver of his speedy trial rights was invalid. We disagree. "Defense counsel may waive a defendant's unripe speedy trial rights. Such a waiver is equivalent to an extension of time for the People to proceed with prosecution. When defense counsel requests or acquiesces in a delay in the proceedings, such time is excludable for statutory speedy trial purposes" (People v Garcia, 33 AD3d 1050, 1052 [2006] [citations omitted], lv denied 9 NY3d 844 [2007]). Here, defendant's former attorney testified that he received a grand jury notice on December 6, 2013, after which he called the District Attorney's office to determine whether a plea deal could be negotiated. Following this conversation, defense counsel met with defendant and advised him to waive his statutory speedy trial rights as leverage to negotiate a plea. Defense counsel testified that defendant consented to this advice and, thereafter, he contacted the prosecutor, who orally agreed not to present the case to the grand jury. Although we reiterate that "prosecutors would be well advised to obtain unambiguous written waivers in situations like these" (People v Dickinson, 18 NY3d 835, 836 [2011] [internal quotation marks and citation omitted]), we nevertheless conclude that the People met their burden of demonstrating that defense counsel orally waived defendant's speedy trial rights in the early part of December 2013 to pursue a plea agreement, rendering the period associated therewith chargeable to defendant and excludable under the CPL 30.30 calculation until the waiver was revoked in or around June 2014 (see People v Waldron, 6 NY3d 463, 467 [2006]; compare People v Smith, 110 AD3d 1141, 1143 [2013]). The testimony that defendant expressed disagreement with counsel's decision to waive his speedy trial rights at certain points during the representation does not change the outcome, as a waiver under CPL 30.30 "does not involve such a fundamental decision that it cannot be made by counsel" (People v Trepasso, 197 AD2d 891, 891 [1993], lv denied 82 NY2d 854 [1993]; see People v Garcia, 33 AD3d at 1052). Accordingly, defendant's argument with respect to the waiver is unavailing.
The Sandoval compromise was not an abuse of discretion inasmuch as County Court appropriately limited the scope of the inquiry with respect to defendant's prior convictions and balanced their probative value against the potential for prejudice (see People v Serrano-Gonzalez, 146 AD3d 1013, 1017 [2017], lv denied 29 NY3d 952 [2017]; People v Martin, 136 AD3d 1218, 1219 [2016], lv denied 28 NY3d 972 [2016]; People v Ramos, 133 AD3d 904, 908 [2015], lvs denied 26 NY3d 1143, 1149 [2016]). Moreover, defendant was not deprived of a fair trial when County Court allowed references to his nickname, as it was not inherently prejudicial when viewed in context of the charges and was probative of his identity (see People v Hernandez, 89 [*4]AD3d 1123, 1125 [2011], lv denied 20 NY3d 1099 [2013]; People v Hoffler, 41 AD3d 891, 892 [2007], lv denied 9 NY3d 962 [2007]).
We also reject defendant's contention that County Court erred in admitting two tape-recorded telephone conversations that occurred when he was in jail on the underlying charges. Inasmuch as call No. 2 was not admitted into evidence, defendant's argument with respect thereto is without merit. As to call No. 3, the statements implying that defendant had a prior criminal record did not violate the court's Sandoval ruling, which permitted the People to ask defendant whether he was convicted of felonies in 2000 and 2007. Moreover, defendant's statements during call No. 3 indicating that the driver of the Honda should take the charges was probative of his consciousness of guilt and the danger of undue prejudice was minimal (see People v Marcus, 101 AD3d 1046, 1048 [2012]).
Defendant next contends that the testimony of one of the arresting officers with respect to the traffic stop and defendant's actions after his arrest should have been precluded because pertinent Rosario material contained in radio transmissions and audio and visual recordings of the officers' vehicle was destroyed prior to trial. Instead of granting defendant's preclusion motion, County Court decided to sanction the People for the Rosario violations by giving an adverse inference charge to the jury. In our view, the adverse inference charge was sufficient to remedy the violation and, accordingly, County Court did not abuse its discretion in denying the preclusion motion (see People v Martinez, 71 NY2d 937, 940 [1988]; People v Poulos, 144 AD3d 1389, 1392-1393 [2016]; People v Davis, 18 AD3d 1016, 1018-1019 [2005], lv denied 5 NY3d 805 [2005]).
We are similarly unpersuaded by defendant's argument that he was deprived of a fair trial due to four statements made by the prosecutor during summation. The comments with respect to the fact that defendant was seen rocking back and forth in the police car and the statements drawing the jury's attention to his repeated attempts to get the driver of the Honda to take responsibility for the underlying charges constituted fair commentary on the evidence and the inferences to be drawn therefrom (see People v Warner, 45 AD3d 1182, 1183 [2007]). Moreover, the prosecutor did not misstate the law regarding defendant's dominion and control of the backpack, and his statement — that "[the driver] came in here and he told you the truth" — while improper, was cured by County Court's instruction that the jury was to disregard it as it was the jury's province to assess the driver's credibility. Given counsel's "wide latitude during summations," and considering the People's summation as a whole, we find that the statements with which defendant takes issue were not "so egregious . . . that they deprive[d] [him] of a fair trial" (People v Rupnarine, 140 AD3d 1204, 1205 [2016]).
Contrary to defendant's contentions, County Court's jury instructions were proper. Initially, defendant's argument that County Court erred in declining to give the destroyed evidence charge that he requested relative to the booking room video is unpersuasive, as any prejudice in this respect was adequately addressed when County Court gave an adverse inference charge for missing Rosario material relative to the booking room video (compare CJI2d [NY] Adverse Inference - Destroyed Evidence, with CJI2d [NY] Adverse Inference - Missing Rosario Material). Nor did County Court abuse its discretion in denying defendant's request for a missing witness charge with respect to a police witness who was present at 575 Washington Avenue when defendant was observed leaving the premises, as defendant indicated that the witness would provide only cumulative testimony with respect to his actions there (see People v Durant, 26 NY3d 341, 347-348 [2015]; People v Jackson, 151 AD3d 1466, 1469 [2017], lv denied 30 NY3d 950 [2017]). Similarly, County Court did not err in giving an expanded charge on the definition of "knowingly." Although defendant contends that an expanded charge was improper [*5]in light of the fact that the People's theory was premised upon constructive possession, he fails to recognize that the People were required to prove both knowledge and the "ability and intent to exercise dominion or control over the contraband" to secure a guilty verdict upon this theory (People v Burns, 17 AD3d 709, 711 [2005] [internal quotation marks and citation omitted]).
Finally, we reject defendant's claim that the sentence is harsh and excessive. Defendant is a second felony drug offender who was convicted of a class A-1 felony, defined in Penal Law article 220. As such, his sentencing exposure ranged from 12 to 24 years (see Penal Law § 70.71 [3] [b] [i]). Given that his sentence fell on the low end of this range and considering his prior criminal history, we find no abuse of discretion nor any extraordinary circumstances warranting a reduction of the sentence in the interest of justice (see People v Crippen, 156 AD3d 946, 953 [2017]; People v Malloy, 152 AD3d 968, 971 [2017], lv denied 30 NY3d 981 [2017]).
Defendant's contentions with respect to the CPL 710.30 notice, his conduct in the police vehicle and County Court's failure to give an interested witness charge are unpreserved for our review, and his remaining contentions lack merit.
McCarthy, J.P., Devine, Aarons and Rumsey, JJ., concur.
ORDERED that the judgment is affirmed.