Bravo v Hull Ave. Apts LLC (2024 NY Slip Op 50239(U))

[*1]

Bravo v Hull Ave. Apts LLC

2024 NY Slip Op 50239(U)

Decided on February 9, 2024

Civil Court Of The City Of New York, Bronx County

Miller, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on February 9, 2024
Civil Court of the City of New York, Bronx County

Amarillis Bravo, Petitioner,

against
Hull Ave. Apts LLC, JOHN DOE, JANE DOE, PABLO GARCIA, Respondents.

Index No. L&T 800643/23

IIan Norwood, Esq., The Legal Aid Society, for Petitioner
Pashko Vuksanaj, Esq., for Respondent Hull Ave. Apts LLC
Pablo Garcia, Respondent appearing pro se

Kisha L. Miller, J.

Petitioner commenced this proceeding against Respondents Hull Ave. Apts LLC, John Doe, and Jane Doe to be restored to possession of the premises located at 315 East 209th St., 4C, Bronx, New York. After the first court date, the court granted Petitioner leave to join the new tenant, Pablo Garcia, to this proceeding. The court conducted a three-day trial where Petitioner, Petitioner's daughter WandaLiz Negron-Garcia, Nick Gazivoda, and Pablo Garcia testified, and several documents were admitted into evidence.[FN1]

Trial Testimony
Petitioner testified as follows: At the end of October 2023, she went to Florida to visit her mother who was hospitalized with COVID. She stayed through Thanksgiving. On November 28, 2023, she returned to the apartment and noticed that the top lock to the apartment door had been removed and the bottom lock had been changed. When her keys did not open the door, she contacted the superintendent and called the police, but management refused to provide access.
Petitioner testified that she has a lease for the apartment, pays the electric and gas bills, [*2]and received government assistance toward the monthly rent. She testified that when she visited her mother, she left valuables, medications, personal items, and furniture in the apartment, including tables, lamps, a television, a dresser, and clothing. She further testified that she did not remove any personal belongings or return the keys, and that she is currently residing in her daughter's one bedroom apartment along three other individuals.
On cross-examination, Petitioner explained that in 2018, she "lost" an apartment on Hughes Ave., went to Albany for a few months, returned to live in a shelter, and then moved into the subject apartment with her then husband. She testified that her husband moved out in 2022 following a domestic violence incident, her nephew Lou moved in soon thereafter, and then Lou moved out in November 2023. She explained that the superintendent installed the top lock when she moved in.
WandaLiz Negron-Garcia, testified that she is familiar with the apartment; that she has visited Petitioner in the apartment within the past year; that the apartment contained furniture and valuables; and that Petitioner is currently sleeping in Ms. Negron-Garcia's bedroom.
Respondent's sole witness Nick Gazivoda, the property manager of the building, testified as follows: In 2018, the tenant of record of the apartment was Martin Nunez, who vacated toward the end of October 2020. Petitioner, who was not living in the apartment in 2018, was provided a lease in 2020. Soon after she moved in, he received a report that the apartment door had been vandalized; that there was an incident of domestic violence; and that Petitioner had moved out while her husband remained in possession.
Mr. Gazivoda further testified that at some point, the direct vendor payments toward Petitioner's rent stopped, and "the person who was living there" moved out in late November 2023. Mr. Gazivoda stated he went to the apartment, which contained debris with no furniture or clothing. He cleaned it, painted it, and replaced the fixtures, which occurred within a day or two. He testified that he located a new tenant by contacting the same rental agent he used to review Petitioner's application.
On cross-examination, Mr. Gazivoda acknowledged that Petitioner was provided a rent stabilized lease and that in July 2023, Hull Ave. filed a nonpayment proceeding against Petitioner. He also acknowledged that Petitioner did not return the keys.
Pablo Garcia testified, briefly, in his own behalf, stating that he was previously residing in a shelter; that at the end of November 2023, he applied to the subject apartment through NYC Human Resources Administration ("HRA"); that he has been living in the apartment since December 15, 2023; and that he receives rental assistance from HRA.
Findings and Conclusions of Law
There are two elements of a cause of action alleging an illegal lockout pursuant to RPAPL §713(10): that Petitioner was peaceably in actual or constructive possession of the premises at the time of the forcible or unlawful detainer, (Andrews v Acacia Network, 59 Misc 3d 10, 2018 NY Slip Op 28026 [App Term, 2d Dept 2018]; Saccheri v Cathedral Properties Corp., 184 Misc 2d 304, 2000 NY Slip Op 20260 [App Term, 2d Dept 2000]), and that Respondents forcibly removed her from the premises (3855 Broadway Laundromat, Inc v 600 West 161st St Corp., 156 AD2d 202 [1st Dept 1989]).
Certain portions of Petitioner's testimony lacked accuracy and truthfulness. Petitioner could not have moved into the apartment in 2018 because another tenant occupied the premises that year. Her testimony that she could not pronounce Lou's last name because he's from "a [*3]different culture," and that Lou did not own a set of keys during the entire year he resided in the apartment were not convincing. However, other portions of Petitioner's testimony were credible. She testified credibly that she has a lease in her name; that she went to visit her mother in Florida in October 2023; that she returned to the apartment in late November 2023 to find the locks changed; that the apartment was furnished; and that she did not remove any personal belongings or surrender the keys.
The credibility of the witnesses, the reconciliation of conflicting statements, a determination of which should be accepted and which rejected, the truthfulness and accuracy of the testimony, whether contradictory or not, are issues for the trier of fact " (Caputo v Assante, 42 Misc 3d 133[A], 2014 NY Slip Op 50054[U] [App Term, 2d, 11th & 13th Jud Dist 2014]; Matter of Carota Enterprises Ltd v Jackson, 241 AD2d 667 [3d Dept 1997] [the trier of fact is in the best position to assess credibility and the probative value of respective testimonies]).
Under the doctrine of falsus in uno, falsus in omnibus, "if a witness has testified falsely as to any material fact, the entire testimony of that witness may be disregarded upon the principle that one who testified falsely about one material fact is likely to testify falsely about everything" (East Side Managers Associates, Inc. v Goodwin, 26 Misc 3d 1233[A], 2010 NY Slip Op 50365[U] [Civ Ct, NY County 2010] citing United States v Gilkeson, 431 F Supp 2d 270 [ND NY 2006]; Noryb Ventures, Inc. v Mankovsky, 47 Misc 3d 1220[A], 2015 NY Slip Op 50715[U] [Sup Ct, NY County 2015]). But the maxim is permissive only — not mandatory (People v Barrett, 14 AD3d 369 [1st Dept 2005]). In other words, the court is free to credit any part of a witness's testimony that it deems true and disregard what it deems false (DiPalma v State of New York, 90 AD3d 1659 [4 Dept 2011]). It is for the court to determine how much, if anything, to believe from a witness (East Side Managers Assoc., Inc. v Goodwin, supra).
Petitioner did not falsely testify to any material fact concerning the central question in this proceeding, namely whether she was in actual or constructive possession of the apartment at the time the locks were changed. The court accepts and credits the portion of Petitioner's testimony establishing that she was in possession of the premises and the evidence supports her testimony. Petitioner and Hull Ave. executed a lease agreement in 2020. Petitioner is listed as the tenant on the apartment registration of the New York State Division of Housing and Community Renewal in 2020, 2021, 2022, and 2023. Hull Ave. acknowledged Petitioner's tenancy by commencing a nonpayment proceeding in 2023, where the petition alleges Petitioner is in possession of the premises and owes arrears based on a written rental agreement.
Mr. Gazivoda failed to establish that Petitioner surrendered possession (Hip Hop Fries Shop, Inc. v Gibbons Realty Corp., 13 Misc 3d 128[A], 2006 NY Slip Op 51720[U] [App Term, 1st Dept 2006] [it is the landlord's burden of proving surrender in response to tenant's prima facie showing of an illegal lockout]). Surrender requires an intention to abandon or relinquish coupled with some overt act or failure to act which carries the implication of neither claiming nor retaining any interest (Coleman v Onsite Property Management, Inc., 44 Misc 3d 1221[A], 2014 NY Slip Op 51217[U] [Civ Ct, Bronx County 2014]). Mr. Gazivoda acknowledged that he never received keys from Petitioner, testifying that "they" surrendered the keys.
Not only is the identity of the individual(s) who provided the keys a mystery, there was also no evidence that the individual(s) had authority to surrender the keys. Essential to the creation of apparent authority are words or conduct of the principal, communicated to a third party, that give rise to the appearance and belief that the agent possess authority to enter into a transaction (ER Holdings, LLC v 122 W.P.R., Corp., 65 AD3d 1275 [2d Dept 2009]). The third [*4]party must have relied upon the misrepresentations of the agent because of some misleading conduct on the part of the principal — not the agent (Ford v Unity Hosp., 32 NY2d 464 [1973] [emphasis added]). Mr. Gazivoda did not identify any words or actions by Petitioner that would lead him to believe that "the person living in the apartment," as he described, possessed authority to surrender the keys. An agent cannot by his own acts imbue himself with apparent authority (Hallock v State of New York, 64 NY2d 224 [1984]).
Mr. Gazivoda cleaned the apartment, painted it, and brought in a new tenant, which forcibly removed Petitioner from possession. Petitioner established her claim as against Hull Ave. But not as against Garcia.
"An RPAPL 713(10) proceeding is not the equivalent of an ejectment action and may be maintained only when the person in possession has entered the property or remains in possession by force or unlawful means" (Kesoglides v Marine Terrace Assoc., 70 Misc 3d 140[A], 2021 NY Slip Op 50126[U] [App Term, 2d Dept, 2d, 11th & 13th Jud Dists 2021]). Garcia located this apartment with the assistance of HRA, signed a lease with Hull Ave., left the shelter system, and moved into the apartment in December 2023. He did not enter possession by unlawful means, nor can it be said that Garcia has remained in possession by unlawful means since the commencement of this proceeding (Kesoglides v Marine Terrace Assoc, id). There is no basis to allow Petitioner to evict Garcia in this proceeding.
Accordingly, it is
ORDERED that the clerk shall enter a final judgment of possession in favor of Petitioner against Respondent Hull Ave. Apts, LLC. Issuance of the warrant of eviction shall be permanently stayed; it is further
ORDERED that the proceeding is dismissed as against Respondents Pablo Garcia, John Doe, and Jane Doe.
This constitutes the decision and order of the court.
Copy will be emailed to all parties and exhibits will be returned by mail.
Dated: February 9, 2024
KISHA L. MILLER, J.H.C.

Footnotes

Footnote 1:The court also took judicial notice of two proceedings: Hull Ave. Apts LLC v Amarillis Bravo, Index LT No. 331368/23; and Bravo v Hull Avenue Apt LLC, Index LT No. 800623/23