*Supreme Court, Appellate Division*
*Third Judicial Department*

Decided and Entered: December 8, 2016          106953
_____

THE PEOPLE OF THE STATE OF
    NEW YORK,
                 Respondent,

      v                          MEMORANDUM AND ORDER

JHAFFRE McCLAIN,
                 Appellant.
_____

Calendar Date: October 19, 2016

Before: Peters, P.J., Garry, Egan Jr., Rose and Mulvey, JJ.

_____

      Aaron A. Louridas, Delmar, for appellant, and appellant pro se.

      P. David Soares, District Attorney, Albany (Michael C. Wetmore of counsel), for respondent.

_____

Peters, P.J.

      Appeal from a judgment of the County Court of Albany County (Herrick, J.), rendered June 24, 2014, convicting defendant upon his plea of guilty of the crimes of robbery in the first degree (two counts) and robbery in the second degree.

      On the evening of July 11, 2013, City of Albany Police Officer Anthony Scalise and his partner responded to a radio dispatch of an armed robbery at a club in the City of Albany. The suspects were described as five or six black males wearing dark clothing and masks. Upon the officer's arrival, several victims informed them that the perpetrators had just fled on foot through the parking lot of a nearby restaurant. After conducting a quick search of the surrounding area, Scalise and his partner

returned to the scene of the crime where they obtained additional information from the victims, including that one of the perpetrators had stolen a backpack and that another was wearing a baseball cap bearing a Detroit Lions insignia. While speaking with the victims, Scalise received a radio transmission indicating that gunshots had been fired at a location a few blocks away and that two males wearing dark clothing and carrying a backpack had been observed running through backyards. Scalise immediately responded to the location of the reported gunfire and, while canvassing alleyways and backyards for the fleeing suspects, he was directed by a bystander to an alleyway. Upon entering the alley, Scalise observed a black Detroit Lions baseball cap similar to the one described by the victims of the armed robbery lying in the grass. He and another officer then continued down the alley to an adjacent yard where they came upon two males, one of whom was later identified as defendant. Both men had scratches on their arms, were "sweating profusely and out of breath," and one of the men had blood on his shirt. The two were then ordered to the ground, handcuffed and held at the scene while Scalise returned to the location of the armed robbery to speak further with the victims. There, Scalise viewed surveillance video capturing the robbery and identified defendant, who was wearing a Detroit Lions baseball cap, as one of the armed robbers. Defendant and the other individual were thereafter arrested and transported to the police station, where one of the victims of the robbery identified defendant from a photo array as one of the assailants.

Defendant and four others were subsequently charged with two counts of robbery in the first degree and one count of robbery in the second degree. Following a combined Dunaway/Wade/Mapp/Huntley hearing, County Court denied defendant's motion to suppress both the physical evidence recovered from his person and the pretrial identification of him. Defendant thereafter pleaded guilty as charged and was sentenced to an aggregate prison term of 11½ years followed by five years of postrelease supervision. He now appeals, challenging County Court's denial of his suppression motion.

We reject defendant's contention that the evidence obtained by the police was the product of an illegal detention. "Street

encounters initiated by police are governed by the
well-established graduated four-level test in which, generally
stated, the level of permissible intrusion increases with the
level of evidence of criminality. These encounters can be
'dynamic situations during which the degree of belief possessed
at the point of inception may blossom by virtue of responses or
other matters which authorize . . . additional action as the
scenario unfolds'" (People v Tillery, 60 AD3d 1203, 1204-1205
[2009] [internal citations omitted], lv denied 12 NY3d 860
[2009], quoting People v De Bour, 40 NY2d 210, 225 [1976]; accord
People v Issac, 107 AD3d 1055, 1057 [2013]). In evaluating the
conduct of the police, "we accord great weight to the credibility
determinations made by the suppression court, given its peculiar
advantage of having seen and heard the witnesses" (People v
Issac, 107 AD3d at 1057; see People v Prochilo, 41 NY2d 759, 761
[1977]).

Here, moments after responding to the scene of the armed
robbery, police received a report of shots fired in an area just
blocks away, observed two men fleeing and were directed by
several bystanders to a location where defendant was discovered.
"Where, as here, police officers find themselves in a rapidly
developing and dangerous situation presenting an imminent threat
to their well-being, they must be permitted to take reasonable
measures" (People v Allen, 73 NY2d 378, 380 [1989] [citation
omitted]; accord People v Stroman, 107 AD3d 1023, 1024 [2013], lv
denied 21 NY3d 1046 [2013]). Given defendant's geographical and
temporal proximity to both the scene of the armed robbery and the
area where shots were fired, the presence of the baseball cap
matching the one reportedly worn by one of the perpetrators and
defendant's physical appearance upon being approached by the
officers, we find that the police possessed reasonable suspicion
that defendant had committed a crime and were therefore
authorized to forcibly stop, frisk and detain him (see People v
Ford, 110 AD3d 1368, 1371 [2013], lv denied 24 NY3d 1043 [2014];
People v Robinson, 101 AD3d 1245, 1245-1246 [2012], lv denied 20
NY3d 1103 [2013]; People v Robinson, 95 AD3d 906, 906 [2012], lv
denied 19 NY3d 1000 [2012]). Once Scalise returned to the
location of the robbery, viewed surveillance of the incident and
determined that defendant was one of the assailants, probable
cause existed for his arrest (see People v Stroman, 107 AD3d at

1024; People v Rose, 72 AD3d 1341, 1345 [2010], lv denied 16 NY3d 745 [2011]).

Nor are we persuaded that defendant's identification as one of the assailants was the result of an impermissibly suggestive police-arranged showup. Accidental showups that result from mere happenstance do not implicate due process concerns, so long as the spontaneous encounter was not caused by police misconduct or questionable police procedures (see People v Dixon, 85 NY2d 218, 223 [1995]; People v Newball, 76 NY2d 587, 591 [1990]). While being led up a flight of stairs at the police station, one of the victims of the robbery saw defendant, who was in civilian clothes and handcuffs, down a hallway approximately 30 feet away. Shortly thereafter, this witness identified defendant from a photo array as one of the armed robbers, and remarked, "He's the same guy I saw in the hallway as we came up the stairs." Upon our review of the record, we find no basis upon which to disturb County Court's determination that the station house encounter between defendant and one of the victims was accidental, spontaneous and not the product of police misconduct or questionable police procedures (see People v Brown, 123 AD3d 938, 939 [2014], lv denied 25 NY3d 949 [2015]; People v Rodriguez, 98 AD3d 530, 531-532 [2012], lvs denied 19 NY3d 1105 [2012], 20 NY3d 935 [2012]; People v Gomez, 60 AD3d 782, 783 [2009], lv denied 12 NY3d 845 [2009]; People v Nimmons, 177 AD2d 444, 445 [1991], lv denied 79 NY2d 922 [1992]).

Defendant's remaining contentions, raised in his supplemental pro se brief, are unpreserved for our review.

Garry, Egan Jr., Rose and Mulvey, JJ., concur.

ORDERED that the judgment is affirmed.




ENTER:

Robert D. Mayberger
Clerk of the Court